[Civ. No. 20512. Third Dist. July 29, 1981.]

MOLLIE WINGARD, Plaintiff and Appellant, v.
SAFEWAY STORES, INC., Defendant and Respondent.

COUNSEL

Rishwain & Hastings and Charles L. Hastings for Plaintiff and Appellant.

Diehl, Steinheimer, Riggio, Haydel & Mordaunt and Douglas A. Haydel for Defendant and Respondent.

OPINION

**BLEASE, J.**—Plaintiff Mollie Wingard appeals from a judgment of dismissal entered after the trial court sustained the motion of defendant, Safeway Stores, Inc., for summary judgment. At issue is whether Safeway, which contracted with a security service for a security guard to protect its warehouse against theft, owed a duty to protect the guard against rape by an intruder. We affirm the judgment.

FACTS

Plaintiff, an employee of American Patrol Service, a security guard service, was assigned by her employer to patrol a warehouse owned by Safeway. The specific nature of plaintiff's duties is not shown by the record; it contains no job description and no contract between Safeway and the patrol service.

While on duty in a guardhouse inside the warehouse, plaintiff was sexually assaulted by an unidentified assailant who severely injured her physically and psychologically. The record shows that a door to the warehouse was left open and there were several other possible means of entry by the assailant.[1] The record does not show whether plaintiff's responsibilities included securing the warehouse.

Police reports show that the extent of criminal activity at the warehouse was limited to thefts of meat. There is nothing to show that any acts of criminal violence other than the attack on plaintiff had occurred there.

Plaintiff filed suit for personal injuries suffered as a result of the attack. In her complaint, she alleged Safeway was responsible for the assault as it "negligently owned, managed and operated said premises" by failing to take adequate measures to prevent unauthorized persons from entering the premises.[2]

Safeway moved for summary judgment, asserting it owed no duty to plaintiff to prevent an unexpected criminal attack by an unidentified third person. After extensive briefing by both sides, the trial court filed a comprehensive 43-page ruling, holding that Safeway owed no duty to plaintiff and that plaintiff's action was precluded by application of the "fireman's rule."

## DISCUSSION

Plaintiff's theory of liability is that Safeway negligently maintained its warehouse such as to permit the entry of plaintiff's assailant and thereby was a cause of her serious injuries. Safeway claims that

---

[1]The declaration of Stockton Police Department officers listed five possible points of entry into the warehouse: "(1) AN OPEN WINDOW IN THE WOMEN'S LOCKER ROOM, [¶] (2) AN OPEN LARGE SLIDING DOOR LOCATED ON THE NORTHEAST CORNER OF THE BUILDING, [¶] (3) A BROKEN WINDOW IN THE SPICE ROOM, [¶] (4 & 5) TWO POSSIBLE ROOF ENTRANCES, [WITH] A 6-FOOT DROP INTO THE BUILDING. A [LADDER] WAS FOUND ... LYING AGAINST THE OUTSIDE OF THE BUILDING WHICH COULD HAVE BEEN USED TO GAIN ENTRY TO THE ROOF."

[2]In pressing her claim of negligence, plaintiff relies on a letter written in April 1976 by her employer to Safeway, in which the employer urged Safeway to change the location of its warehouse guard room. Apparently, Safeway took no action in regard to the recommendation. However, the letter was directed at helping Safeway better secure the area from thefts and had no direct significance concerning personal security of the guard. The letter is thus of minimal significance.

there is no duty to protect against the criminal conduct of a third person in the absence of similar prior criminal acts and there is no duty to protect a security guard from criminal conduct.

This case comes to us on a limited record which fails to reveal the contractual relationship of the patrol service to Safeway or the plaintiff's precise duties. We are not even told whether it was one of plaintiff's duties to secure the warehouse door, one of the possible means of entry of her assailant.[3] On this threadbare record, we decline the drastic resolution of the issue of duty involved in extension of the fireman's rule to private security guards.[4]

We resolve the issue in the context of plaintiff's theory that a dangerous condition of property was a concurrent cause of her injuries. (See *Campodonico* v. *State Auto Parks, Inc.* (1970) 10 Cal.App.3d 803, 808 [89 Cal.Rptr. 270]; and see *Slapin* v. *Los Angeles International Airport* (1976) 65 Cal.App.3d 484, 490 [135 Cal.Rptr. 296].) Her theory proceeds from the general proposition "that in a large number of situations the very reason why the defendant's conduct is negligent is that it creates the risk of the particular intervening criminal act . . . ." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts § 643, pp. 2922-2923.) "Under these principles an actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was *reasonably foreseeable* at the time of his negligent conduct." (Italics added.) (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 163 [95 Cal.Rptr. 623, 486 P.2d 151].)

The trial court cast the problem in two molds: first, as a problem of duty arising from the special relationship of landowner; second, as a problem of duty arising from the special nature of the employment. We view the problem as a compound of the molds, for Safeway entered into a relationship with plaintiff as landowner and as a contractor of services.

---

[3]Plaintiff cannot rely upon her pleadings to controvert factual matters introduced by Safeway. (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 188, pp. 2837-2838.)

[4]The analogy between police and security guards is only superficially apparent. Their legal powers, duties and benefits may vary greatly. By declining to rest on the fireman's rule, we look to a more particularized analysis which may include claims of assumption of risk.

Plaintiff, on her theory, must show that Safeway had *the* duty to secure the warehouse against intruders and that a breach of the duty was *a* proximate cause of her injuries.

Prior to *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], the proprietor of a business establishment owed a general duty to his business invitees, including a workman brought on the proprietor's premises to perform work there (*Hinds* v. *Wheadon* (1942) 19 Cal.2d 458 [121 P.2d 724]), to exercise care to avoid injury to them. "The general duty include[d] not only the duty to inspect the premises in order to uncover dangerous conditions (*Sexton* v. *Brooks*, 39 Cal.2d 153, 156 [245 P.2d 496]; Rest.2d Torts, § 344, com. f; 156 A.L.R. 1221), but, as well, the duty to take affirmative action to control the wrongful acts of third persons which threaten invitees where the occupant has reasonable cause to anticipate such acts and the probability of injury resulting therefrom. [Citations.]" (*Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793]; see also *Young* v. *Desert View Management Corp.* (1969) 275 Cal.App.2d 294 [79 Cal.Rptr. 848].) *Rowland* did not abolish the duty but, rather, subsumed it under a more comprehensive duty to all those coming on the owner's land in the management of the property to act as a reasonable man in view of the probability of danger to others, a danger which might relate to the "status" of the "invitee." (*Rowland* v. *Christian, supra*, 69 Cal.2d at p. 119.)

Pursuant to this general duty, Safeway, as landowner and contractor of services to be performed in its property, had a duty to take reasonable steps to provide persons working on its property with a safe place to work. The reasonableness of its conduct may vary with the nature of the work contracted to be performed, but Safeway may not evade all responsibility merely because the work to be done is fraught with risk. If plaintiff had been injured (say) by the negligent collapse of the guardhouse in which she was stationed, Safeway's duty to her would be manifest. Plaintiff's theory requires that Safeway have a duty to physically secure its warehouse from intruders and thereby "control the wrongful acts of third persons which threaten" the patrol guards. (*Taylor* v. *Centennial Bowl, Inc., supra*, 65 Cal.2d at p. 121.) We do not know on this record whether Safeway had such a duty.

Assuming that Safeway had such a duty, it must be shown that the intervening criminal act was a reasonably foreseeable consequence of breach of that duty. It was, of course, foreseeable that criminal acts

(thefts) would occur on Safeway's property. They had occurred and that was undoubtedly the reason for employing the patrol service for which plaintiff worked. It was equally foreseeable that a person apprehending or seeking to apprehend a thief, or even present at the scene of an attempted theft, might be subject to assault.[5]

As to these risks, plaintiff, by virtue of her employment, assumed certain reasonable risks. (See, generally, Prosser, Law of Torts, (4th ed. 1971) pp. 442-447.) The defense of assumption of risk has been abolished in California "to the extent that it is merely a variant of the former doctrine of contributory negligence . . . ." (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]; *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725, 734-735 [144 Cal.Rptr. 380, 575, P.2d 1162].)

However, "an 'unreasonable' assumption of risk is but a variant of contributory negligence. [Citation.]" (*Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.3d 51, 57 [148 Cal.Rptr. 596, 583 P.2d 121]; *Gonzalez* v. *Garcia* (1977) 75 Cal.App.3d 874, 878-881 [142 Cal.Rptr. 503].) And "[t]he defense of assumption of risk is valid only when the plaintiff had actual knowledge and appreciation of the specific danger involved and its magnitude." (*Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 746 [140 Cal.Rptr. 905]; relying on *Vierra* v. *Fifth Avenue Rental Service* (1963) 60 Cal.2d 266, 274 [32 Cal. Rptr. 193, 383 P.2d 777].)

It cannot be said, however, that plaintiff assumed the risk of being raped. By a similar measure, it cannot be said that Safeway could be held to reasonably foresee that a female security guard would be brutally assaulted and raped inside its warehouse, or, on this record, that rape is a risk associated with those criminally disposed to theft.

Here, plaintiff failed to rebut facts which demonstrate that Safeway could not have reasonably foreseen or anticipated the rape. While the trial court apparently took judicial notice that the area of the city in which the warehouse is located is a high crime area, this fact is of limited significance; it does not specify whether the area was one with a high crime rate for violent crimes, nor does it demonstrate that Safeway had

---

[5]We do not, of course, know whether such apprehension was a part of plaintiff's duties. It appears that she was unarmed and that the service provided by the patrol service did not include armed guards.

either actual or constructive knowledge of any violent crimes occurring in the area. (Cf. *Totten* v. *More Oakland Residential Housing, Inc.* (1976) 63 Cal.App.3d 538, 543 [134 Cal.Rptr. 29]; *Irby* v. *St. Louis County Cab Co.* (Mo.App. 1977) 560 S.W.2d 392, 395.) The only evidence in the record pertaining to criminal activity at the warehouse concerns thefts of meat taken from the building and no such crime had occurred within 20 months of the attack on plaintiff. (Cf. *Turner* v. *United States* (D.D.C. 1979) 473 F.Supp. 317, 320.)

The cases are many which hold that, in the absence of prior similar incidents, an owner of land is not bound to anticipate the criminal activities of third persons, particularly where the wrongdoer was a complete stranger to both the landowner and the victim and where the criminal activity leading to the injury came about precipitously. (E.g., *Jamison* v. *Mark C. Bloome Co.* (1980) 112 Cal.App.3d 570, 579-580 [169 Cal.Rptr. 399]; *Totten* v. *More Oakland Residential Housing, Inc., supra,* 63 Cal.App.3d at pp. 543-546; *Rogers* v. *Jones* (1976) 56 Cal.App.3d 346, 350-352 [128 Cal.Rptr. 404]; *Young* v. *Desert View Management Corp., supra,* 275 Cal.App.2d at pp. 298-300; see also, *Turner* v. *United States, supra,* 473 F.Supp. at pp. 319-320; *Irby* v. *St. Louis County Cab Co., supra,* 560 S.W.2d at pp. 395-396; *Cornpropst* v. *Sloan* (Tenn. 1975) 528 S.W.2d 188, 197-198.) Here, the record is clear that there were no previous assaults or even threats of violent criminal activity. The previous thefts at the warehouse neither provided notice nor created any reasonable foreseeability of the sexual attack which was inflicted upon plaintiff. (See *Jamison* v. *Mark C. Bloome Co., supra,* 112 Cal.App.3d at p. 574.) The facts presented fall short of creating a duty owed by Safeway to plaintiff. (Cf. *ibid.*)

The trial court did not err in granting defendant's motion for summary judgment.

The judgment is affirmed.

Puglia, P. J., and Carr, J., concurred.