Decided October 19, 1988

516

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

MICHAEL J. GIODA,                          )      DCA NO. 84-9014
                                           )      DC CIVIL NO. 82-0025
            Plaintiff-Appellee,            )
                                           )
        vs.                                )      OPINION
                                           )
SAIPAN STEVEDORING COMPANY, INC.,          )
                                           )
            Defendant-Appellant.           )
_____)

BEFORE:     DUENAS and WATERS, District Judges, and HEFNER,
            Designated Judge[*]

HEFNER, Designated Judge:

        In July, 1985 this panel heard oral arguments on the
merits of this appeal from a jury verdict and judgment entered
against the defendant for damages. Following oral argument, a
question of jurisdiction was raised and as a consequence the
panel felt obligated to transfer the matter to the Court of
Appeals pursuant to 28 U.S.C. § 1631.

        This transfer was denied by the Court of appeals and
remanded for a decision on the merits. <u>Gioda v. Saipan</u>

_____

        [*]Honorable Robert A. Hefner, Commonwealth Trial Court
Chief Judge, sitting by designation pursuant to 48 U.S.C.
§ 1694(b).

517

Stevedoring Company, Inc., No. 86-2435 (9th Cir. filed 8/18/88).

This panel now proceeds to determine the appeal.

## FACTS[1]/

The plaintiff-appellee (Gioda) was employed by the defendant-appellant, Saipan Stevedoring Company, Inc. (SaiSteve) commencing in 1979 as a security guard at Charley Dock, the commercial dock on Saipan.

While on duty as a security guard at the guard shack on June 19, 1980, a car drove up at about 3:40 a.m. and stopped about six feet from the shack. One man exited the car and called Gioda to come out. As Gioda looked out of the door of the shack, an unidentified person, holding one hand behind him demanded plaintiff's pistol and told the plaintiff if he did not throw it out he would be shot. The plaintiff walked to the desk drawer in the shack, obtained a .38 caliber pistol and returned to the entrance of the shack with the weapon. At this time, he was shot by his assailant with a .410 shotgun. This was the first time Gioda had seen the weapon used to shoot him. Immediately after the shooting, the assailant got back into the car and left the area.

---

[1]/ The facts recited are essentially taken by reference to appellant's brief. The appellee concurs in those facts except for certain portions. In any case this occurs, the appellee's view of the case is accepted.

The plaintiff testified he did not know his assailant.

The plaintiff was further allowed to testify, over objection by defendant, that he, the plaintiff, could have protected himself if he had received training and bullets for his pistol.

At the time of employment and up to the time of the incident which gave rise to this litigation, private security guards could receive a pistol and training in the use of the pistol from the Commonwealth Department of Public Safety (DPS). The only way a private security guard could receive legal authority to possess a .38 caliber pistol was after he was deputized by DPS. All firearms for private security guards (including the .38 caliber pistol in the guard shack) were provided by DPS. Even the ammunition for the weapon had to be supplied by DPS. The latter would not deputize anyone until and unless the person had been taken to the police firing range ano successfully completed firearm training.

Although SaiSteve had requested the deputization of some of its security guards, the procedure was not been implemented because DPS did not have a sufficient supply of bullets to train private security guards.

Gioda's application and request for deputization were pending with DPS at the time he was shot. However, none of the SaiSteve security guards were deputized for several months prior to June 19, 1980 when Gioda received the injuries he complains of and for which the jury awarded over $63,000 in damages.

Notwithstanding the failure of DPS to train and deputize Gioda, a .38 caliber pistol was kept in a drawer at the guard shack where Gioda worked. The plaintiff testified there was no ammunition provided for the weapon. The guard shack is at Charley Dock, portions of which are leased by SaiSteve to carry on its stevedoring activities. The purpose of the security guards is to prevent pilferage and vandalism. The Chief of Police testified that Charley Dock was considered by the police department to be a low crime area and no shooting incident had occurred there for 18 years previously.

## LAW APPLICABLE TO THE CASE

At the time this case was tried, jurisdiction was vested in the District Court by virtue of Article IV, Section 2, of the Commonwealth Constitution and 48 U.S.C. § 1694-1694e.[2/]

Therefore this is a local case, which must be decided by local law which, of course, includes the specific

---

[2/] 48 U.S.C. § 1694-1694e establishes the District Court for the Northern Mariana Islands. Section 1694a(b) provides that the District Court shall have original jurisdiction over all causes which are not vested in the court of the Northern Mariana Islands (Commonwealth Trial Court). This case was filed in the District Court prior to January 10, 1983 and under the state of the law at that time, jurisdiction was vested in the District Court. Public Law 3-14, passed by the Commonwealth Legislature, provided that after January 10, 1983 all filings of "local" cases would be in the Commonwealth Trial Court.

Commonwealth statutes in effect at the time (primarily the Weapons Control Act - 6 CMC §§ 2202-2230) and the general law to be followed in the Commonwealth as delineated in 7 CMC § 3401.3/

Of course, even if the above were not cemented in place, the District Court would be obliged to apply the law of the Commonwealth under the authority of Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938).

## ISSUES ON APPEAL

The issues raised on appeal are:

1. Was it error for the trial court to allow the plaintiff to testify as to what he would have done to protect himself if the defendant had furnished plaintiff with bullets for his pistol and firearm training?

2. Were the acts of the defendant the proximate cause of plaintiff's injury?

3. Was the criminal act of a third party the sole and proximate cause of plaintiff's injury?

4. Whether there was error in the giving of the jury instructions?

---

3/
7 CMC § 3401 provides in pertinent part that the rules of the common law as expressed in the restatements of the law approved by the American Law Institute and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Commonwealth.

521

## DISCUSSION

I.   IT WAS ERROR TO ALLOW THE PLAINTIFF TO TESTIFY THAT HE COULD HAVE AVOIDED INJURY IF HE HAD FIREARM TRAINING AND BULLETS FOR THE PISTOL.

The evidence is uncontradicted that it was the sole legal responsibility of the Commonwealth Department of Public Safety to train, deputize, and supply weapons and ammunitions for private security guards and not that of SaiSteve.

Yet the claim of the plaintiff, as alleged in ¶ 10 of the complaint is that plaintiff's injury was '"... the direct and proximate result of the defendant's failure to provide plaintiff with instruction and ammunition..."[4/]

The pertinent questions and answers objected to by SaiSteve are:

> "Q. Assuming that you had received training in the use of the firearm as well as bullets for the firearm, what would you have done that evening?

---

[4/] Although the plaintiff testified he had no bullets for the pistol, there was testimony which indicated there were bullets either in the gun or in the shack. The jury apparently found the plaintiff's version to be correct. This only means that the Department of Public Safety did not supply the bullets. Nothing is alleged about the supplying of the pistol. This would appear to be the only thread plaintiff could grasp to show some negligence by the defendant. If the defendant supplied or placed the pistol in the shack, one might find the defendant led the plaintiff into some sort of false sense of security. But the plaintiff does not complain of the supplying of the pistol — only the lack of training and bullets. It is clear that even making the pistol available to a security guard, not deputized by the Department of Public Safety, is unlawful. However, this unlawful act is not the crux or gravamen of plaintiff's complaint.

522

A. I believe if I have bullet with me that night I could prevent myself also from difficulty.

Q. What would you have done?

A. Well, I could also use the pistol, the thing like what he did to me."

There is no doubt the questions asked for an opinion and the plaintiff was not testifying as to any fact. The opinion offered by the plaintiff was so speculative as to fail to satisfy even the basic requirements of Rule of Evidence 701.5/

There is no pretense the plaintiff was testifying as an expert. Quite the contrary, his complaint was that he was injured because of his lack of pistol training.

In such a case, his opinion as to what he could have done in those few moments on the night of June 19, 1980 is not "rationally based on the perception of the witness" nor "helpful to a clear understanding of his testimony as the determination of a fact in issue."

This is particularly true in this case since the plaintiff, admittedly being inexperienced with guns, testified

---

5/
Rule 701 - Opinion Testimony by Lay Witnesses.
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

523

that he had not even seen his assailant with a weapon until he retrieved the pistol and was shot at almost the same time he reached the guardhouse door. Even if the plaintiff had been an experienced marksman, his own testimony of how he was shot discredits the theory that he could have avoided injury.

It was clear error to allow the plaintiff to testify and neither the record nor appellee's brief and argument can point to any rule of evidence under which such testimony could conceivably be allowed. Indeed, appellee falls back to the "harmless error" position as indeed he must.

His position here is on a little better footing but in view of the basis and theory the case went to the jury, it becomes clear that the plaintiff's testimony only compounded the other errors. We turn now to those.

II. WERE THE ACTS OF THE DEFENDANT THE PROXIMATE CAUSE OF PLAINTIFF'S INJURY?

III. WAS THE CRIMINAL ACT OF A THIRD PARTY THE SOLE AND PROXIMATE CAUSE OF PLAINTIFF'S INJURY?[6]

Plaintiff's claim of liability on the part of the defendant was the failure to provide bullets and weapon training to the plaintiff.

What is important to recognize at the outset is what this case is not about.

_____

[6] Both of these issues are inter-related so they will be discussed as one.

524

It is _not_ about a security guard put in a high crime area where violence was a frequent or even an occasional incident.

It is _not_ about a security guard posted at the dock to protect against shootings.

It is _not_ about a legal duty imposed upon the defendant to perform.

The evidence is that Gioda's job was to protect the defendant's property and the property entrusted by others in the defendant (appellee's brief, p. 8, lines 7-10).

The evidence is uncontradicted that the defendant had no prior knowledge, nor did it have reason to suspect or know, that the dock area where plaintiff was posted was anything other than a reasonably safe place of employment. According to the police, no shooting or violence of the nature plaintiff complains of had occurred there for at least 18 years.

What plaintiff's case boils down to is that the defendant was negligent in _not_ breaking the law by giving the plaintiff bullets and by providing weapon training it was not authorized to provide. Such a theory does not translate into any liability on the part of the defendant. The defendant's acts of not illegally providing the bullets for the pistol cannot, by any legal theory, be the proximate cause of plaintiff's injury.

The Weapons Control Act of the Commonwealth, which was in effect during all the pertinent times relating to this case,

**525**

provides that no person may possess any .38 caliber firearm or ammunition unless that person is a law enforcement official or deputized by the DPS after complying with the rules and regulations promulgated by the Attorney General. 6 CMC §§ 2202, 2203, 2208, 2222(e) and 2228.

If a person qualifies for an identification card, he or she may possess a rifle no larger than .22 caliber or a shotgun no larger than .410 guage. 6 CMC § 2222(e). Since it is illegal for any handgun, especially a .38 caliber one, to be possessed by anyone in the Commonwealth except a law enforcement officer, the weapon and ammunition must be supplied by the DPS. (Tr. pp. 185, 186 and 351). Any private employer wishing to employ an armed security guard must request that the DPS deputize that security guard and, before being deputized, the private security guard must be trained by the DPS in weapons use. This is the law and was confirmed by the uncontradicted testimony at trial. (Tr. pp. 172, 173, 174, 185, 186 and 351).

Simply stated, it was beyond the control, authority and province of SaiSteve to provide Gioda with either the ammunition or the training - the lack of which he claims as the basis of his lawsuit against SaiSteve.

The only disturbing activity the defendant can be charged with is the possible unauthorized and illegal placement of the weapon in the guard shack which placed the weapon in the possession of Gioda who was not deputized

**526**

pursuant to law.[7] Plaintiff appears to argue that once the pistol was supplied, defendant breached some duty to plaintiff by failing to supply him with ammunition for the pistol. No authority is cited for this proposition and it would be surprising if any existed.

If we are to assume that the act of the defendant in supplying the weapon was negligence, the plaintiff still faces the insurmountable barrier of avoiding the fact that the shooting of the plaintiff was a superseding intervening cause of plaintiff's injuries. The weapon that was supplied to the plaintiff was not the one causing the injury.[8]

The analysis of negligent claims based on a criminal act of a third party is rather straightforward.

---

[7]
The placement of the weapon in the drawer in the guard shack did not technically place possession in the plaintiff by the defendant. However, it appears that Gioda knew that the weapon was kept there, presumably on a more or less permanent basis, and perhaps SaiSteve can be faulted for leaving it there for unauthorized personnel such as Gioda to retrieve it. Even so, this is not what this case is about nor does plaintiff's case rest on this.

[8]
Compare United States v. Shively, 345 F.2d 294 (5th Cir. 1965) cert. den. 382 U.S. 883. In Shively, the Army, in violation of its regulations, knowing the off-duty soldier was having marital problems, gave the soldier a pistol which he used to shoot his wife. Even in such a case much more egregious than this case, the court found the United States not liable because the shooting was not foreseeable, was an intervening act, and that the proximate cause of the injury was not the supplying of the pistol but was the intervening act of the soldier.

Section 448 of the Restatement of Torts, Second, provides the rule of law applicable to this case:

> "The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."

There is no doubt that plaintiff was injured by the criminal act of a third person and that this act was a superseding cause of plaintiff's harm. The actor's (SaiSteve) conduct was neither negligent nor did it create a situation which afforded an opportunity to the assailant to commit the crime. As indicated above, the failure to provide training and ammunition was not the fault of SaiSteve nor did the failure to supply training and ammunition to Gioda afford the opportunity for the assault to occur. The record is uncontradicted that the assault on Gioda was not anticipated, not foreseen, nor could SaiSteve realize the likelihood of such a criminal assault on Gioda. To repeat, the area where plaintiff was stationed was not a high crime area nor can it even be classified as a crime area. Even the plaintiff testified that

528

his assailant was unknown and there is nothing to show a forewarning of a possible criminal assault.

Under the law, the only time liability may be imposed on a defendant for a criminal assault of a plaintiff by a third person is when the criminal act was reasonably foreseeable. Landeros v. Flood, 551 P.2d 389 (Cal. 1976); Ekberg v. Greene, 588 P.2d 375 (Colo. 1978); F&T v. Woods, 594 P.2d 795 (N.W. 1979); Collins v. Greenstein, 595 P.2d 275 (Haw. 1979).

The crucial question in determining whether a third person's criminal act is to be considered the efficient proximate cause of injury is the foreseeability of the illegal conduct. Central Alarm of Tucson v. Ganem, 567 P.2d 1203, 1205 (Ariz. App. 1977).

Here, we have the relationship of an employer and employee but the rule is the same. The employer has a duty to make reasonable provisions against foreseeable dangers of criminal misconduct to which the employment exposes the employees. 53 AmJur2d, Master & Servant, §§ 215, 216; 9 ALR3d 517; 10 ALR3d 619.

Thus, even if we could ignore the fact that it was the Government's responsibility to train the plaintiff and supply the ammunition, to impose liability on SaiSteve, plaintiff must show that SaiSteve could have reasonably foreseen the criminal act of the assailant.

The cases which deal with the foreseeability of criminal acts generally revolve around the place or situation in

529

which the plaintiff is placed by the defendant. Liability of the employer is found when the employer is aware, or had reason to know, that the employee was placed in a dangerous place. Lillie v. Thompson, 332 U.S. 459, 68 S.Ct. 140 (1947); see, also, 10 ALR3d 619, supra. In this case, plaintiff impliedly, if not expressly, concedes that SaiSteve had no reason to believe it had placed plaintiff in a dangerous place.

Plaintiff argues that since he was employed as a security guard, this, in and of itself, satisfies the element of the foreseeability of danger. To buttress this argument, plaintiff asserts that defendant must have known it was dangerous for the plaintiff to be at the guard shack, otherwise the defendant would not have given him a pistol.

This argument cannot prevail for several reasons in addition to those already set forth.

There are only a few cases found which deal with security guards who are injured by the criminal acts of third parties and the security guard sues his employer. All were decided in the employer's favor. Fraser v. Chicago, R.I. & P.R. Co., 165 P. 831 (Kansas 1917); Devore v. Louisiana & A.R. Co., 178 So. 706 (La. App. 1938); Yazoo & M. Valley R. Co. v. Hullum, 80 So. 645 (Miss. 1919); Wingard v. Safeway Stores, Inc., 123 Cal.App.3d 37, 176 Cal.Rptr. 320 (Cal. App. 1981).

In Fraser, the guard was shot by an escaping prowler who had gained access to a warehouse by way of a door that was left unlocked by the employer. The court held that the duty to

lock the door was a duty to the shippers to protect their property from theft and was not a duty to the plaintiff. No proximate cause was found as the unbolted door was merely a condition, not a cause, of the injury.[9/]

_Devore_ involved a night watchman who was shot, presumably by strikers, while guarding the employer's railroad bridge. The action was brought under the Federal Employer's Liability Act. The court found the watchman assumed the risk. Plaintiff's contention that the employer was negligent because of the failure of defendant to furnish him with a weapon was rejected.[10/]

_Yazoo_ also involved a shooting and injuries the plaintiff received in a gun battle with burglars. The plaintiff's case was based upon the fact that the employer had failed to inform him of the dangerous "extraordinary conditions" existing at the scene of employment. There was evidence of prior attacks on trains and assaults on other employees. The court held that the plaintiff assumed the risk and that since the prior attacks were exclusively on blacks and

---

[9/] Similarly, the unloaded pistol in the plaintiff's guard shack was a condition and not the cause of plaintiff's injury.

[10/] The similarity between this allegation and that of Gioda is apparent.

not whites (which the plaintiff was) this, in effect, did not provide the foreseeability element.[11]/

In _Wingard_ a security guard was sexually assaulted while on duty at defendant's warehouse. In affirming the trial court's dismissal of plaintiff's claim, the Court of Appeals found that the owners of the warehouse had no duty to protect plaintiff where there had been no previous assaults or threats of violent criminal activity in the warehouse and the previous thefts at the warehouse neither provided notice nor created any reasonable foreseeability of an attack being inflicted on plaintiff. In particular, the court noted that "in the absence of prior similar incidents, an owner of land is not bound to anticipate the criminal activities of third persons, particularly where the wrongdoer was a complete stranger to both the landowner and the victim and where the criminal activity leading to the injury came about precipitously." _Id._, 123 Cal.App. at 43, 176 Cal.Rptr. at 324.

Neither the case law nor the Restatement supports the finding of liability of the defendant. The trial court should hav granted the defendant's motion for a directed verdict and it was error for the matter to go to the jury. As a result,

_____

11/
The reasoning of the _Yazoo_ court is certainly questionable and it is doubtful if such a decision would be reached today. However, _Yazoo_ is a far cry from the evidence in this case in which there was no prior history of assaults or violence.

the jury, on no acceptable legal theory, awarded substantial damages against the defendant. This is a clear case of digging into the "deep pocket" of a defendant without any legal basis to do so. A jury verdict must be based on a proper legal premise and without it, the verdict must be set aside. The requirement of proximate cause must exist in negligence cases and that requirement is woefully lacking here.[12]

The judgment is reversed and remanded to the trial court for entry of judgment for the defendant.

Dated: _October 19, 1988_

_____
CRISTOBAL C. DUENAS, District Judge

_____
LAUGHLIN E. WATERS, District Judge

_____
ROBERT A. HEFNER, Designated Judge

---

[12] In light of our ruling, we need not discuss or decide the jury instruction issues raised by appellant.