[No. S116358. May 6, 2004.]

AARON WIENER et al., Plaintiffs and Appellants, v.
SOUTHCOAST CHILDCARE CENTERS, INC., et al., Defendants and
Respondents.

1140

COUNSEL

Law Offices of Ginsburg & Hlywa and Evan L. Ginsburg for Plaintiffs and Appellants Aaron Wiener and Pamela Wiener.

Law Offices of Federico C. Sayre, Federico C. Sayre, Daniel H. Cargnelutti and Emery El-Habiby for Plaintiffs and Appellants Eric Soto and Cindy Soto.

McKay, Byrne & Graham, John P. McKay, Michael P. Acain, Michael A. Byrne and David R. Denton for Defendant and Respondent First Baptist Church of Costa Mesa.

Jeffery & Grosfeld, Mona J. Jeffery; Harris & Green, Lon Harris, Gary L. Green and Gregory Heuser for Defendant and Respondent Southcoast Childcare Centers, Inc.

Stutz, Artiano, Shinoff & Holtz, Daniel R. Shinoff, Paul V. Carelli IV and Jack M. Sleeth, Jr., for The Educational Legal Alliance of the California School Boards Association as Amicus Curiae on behalf of Defendant and Respondent Southcoast Childcare Centers, Inc.

Deborah J. La Fetra for Pacific Legal Foundation and Pacific Justice Institute as Amici Curiae on behalf ofDefendants and Respondents.

OPINION

CHIN, J.—We granted review in this case to determine whether a child care center and its property owner should be liable in tort for a third party's intentional criminal act against the center's children, when there had been no reported prior similar criminal acts or indeed any similar activity on or near the child care premises. As will appear, we conclude that under *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 678 [25 Cal.Rptr.2d

137, 863 P.2d 207] (*Ann M.*), and its progeny, the center and property owner should not be liable because the criminal act involved here was unforeseeable.

STANDARD OF REVIEW

■ Because plaintiffs appealed from the trial court's order granting defendants summary judgment, we independently examine the record in order to determine whether triable issues of fact exist to reinstate the action. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143] (*Saelzler*).) As we stated in *Sharon P. v. Arman Ltd.* (1999) 21 Cal.4th 1181 [91 Cal.Rptr.2d 35, 989 P.2d 121] (*Sharon P.*), involving a negligence claim based on a criminal act and resolved on summary judgment, "To prevail on [an] action in negligence, plaintiff[s] must show that defendants owed [them] a legal duty, that they breached the duty, and that the breach was a proximate or legal cause of [their] injuries." (*Id.* at p. 1188; Code Civ. Proc., § 437c, subd. (o)(2).) We have recently observed that the amendments to Code of Civil Procedure section 437c modified the *Sharon P.* rule to place the initial burden on the defendant moving for summary judgment and shift it to the plaintiff upon a showing that the plaintiff cannot establish one or more elements of the action. (*Saelzler, supra,* 25 Cal.4th at pp. 767–768.)

In this action, therefore, we must determine whether defendants have shown that plaintiffs have not established a prima facie case of negligence, "a showing that would forecast the inevitability of a nonsuit in defendants' favor. If so, then under such circumstances the trial court was well justified in awarding summary judgment to avoid a useless trial." (*Saelzler, supra,* 25 Cal.4th at p. 768; see *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 335, fn. 7 [100 Cal.Rptr.2d 352, 8 P.3d 1089]; see also *id.* at p. 374 (conc. opn. of Chin, J.) [amendments to summary judgment statute modified traditional rule to provide that moving party may establish summary judgment by showing plaintiff failed to present triable evidence crucial to the case].)

■ In performing our de novo review, we view the evidence in the light most favorable to plaintiffs as the losing parties. (*Saelzler, supra,* 25 Cal.4th at p. 768.) In this case, we liberally construe plaintiffs' evidentiary submissions and strictly scrutinize defendants' own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiffs' favor. (*Ibid.*) Keeping these principles in mind, we resolve the action in defendants' favor.

FACTS

Southcoast Childcare Centers, Inc. (Southcoast), had leased its child care property from First Baptist Church of Costa Mesa (the Church) since 1997.

The child care center was located on a busy street corner on Santa Ana Avenue in Costa Mesa. A four-foot-high chain link fence enclosed the playground located adjacent to the sidewalk and street. On May 3, 1999, Steven Abrams intentionally drove his large Cadillac Coupe de Ville through the fence, onto the playground, and into a group of children.

The carnage caused by Abrams's act was horrific. He killed two children, Brandon Wiener and Sierra Soto, and injured several others. Plaintiffs Aaron and Pamela Wiener, the parents of Brandon, and Eric and Cindy Soto, the parents of Sierra (collectively, plaintiffs), sued Southcoast and the Church (collectively defendants),[1] alleging wrongful death, negligence, and premises liability. Plaintiffs also sued Abrams, who is not a party to this appeal. A court-appointed psychiatrist examined Abrams and concluded that "the offense at the schoolyard in itself, in the context of Mr. Abrams' life pattern—behavior and in the context of our society's standards and norms, was patently and highly absurd and bizarre, and was so outrageous that it borders on the inconceivable." Abrams was convicted of first degree murder in the deaths of Brandon and Sierra with lying-in-wait and multiple murder special circumstances, attempted murder, and inflicting great bodily injury on the injured children. He was sentenced to life without parole.

Plaintiffs' complaints against defendants, which were consolidated in the trial court, alleged that defendants were aware the chain link fence in front of the property provided inadequate protection against intrusion into the child care center, that the fence was three to four feet from the roadway, and that Shirley Hawkinson, owner of Southcoast, had previously requested the Church provide funds to erect a higher fence in order to prevent the children from escaping the property. In the past, before Southcoast operated the child care center, a few noninjury traffic accidents happened near the property next to the sidewalk.

One freak accident occurred in 1996, of which Hawkinson testified she had no knowledge. According to a neighbor, a mail truck pulled up to the sidewalk across the street from the child care center, and the mail carrier reached out of his truck to open the adjacent mailbox. As the mail carrier reached for the box, he slipped, did a flip, and landed between the mailbox and the truck. The truck took off and headed toward the fence across the street. At the time, the property was leased by another school, not Southcoast. The truck bounced over the curb and went through the fence before coming to a stop at a tree inside the yard. Other than the mail carrier, who hurt his back, no one was injured in the incident.

---

[1] There are no issues regarding control of the property or fault that would require us to treat defendants separately.

Neighbors testified that other traffic incidents occurred near the premises involving vehicles that hit the curb, although no cars had gone through the fence at the child care center's location. The City of Costa Mesa reported no known traffic accidents at the child care center's site. Plaintiffs alleged, however, that had a sturdier barrier (i.e., a brick and iron fence) been in place at the time Abrams decided to kill the children, the barrier would have prevented him from driving his car onto the playground and killing them.

In nearly identical responses, defendants each moved for summary judgment, contending that Abrams's murderous rampage was a "wholly unforeseeable" criminal act that could not give rise to negligence liability under *Ann M., supra,* 6 Cal.4th 666. Defendants' moving papers included Hawkinson's declaration stating that she was unaware of any prior criminal acts on the premises before Abrams's attack. Neither defendant was aware of any criminal acts or incidents occurring on or around the child care property, and neither had notice of any prior similar acts that would place it on notice of a need for increased security. The Church also contended that the fence surrounding the playground was in compliance with the applicable code and safety regulations on the date of the incident.

In opposition to the summary judgment motions, plaintiffs asserted that defendants owed a duty as a matter of law to plaintiffs, because it was foreseeable that any vehicle could leave the road and strike the playground fence. Plaintiffs contended that defendants had a general duty to maintain their property in a reasonably safe condition, and that defendants had a statutory duty to fence the playground in a manner that protected the children. Plaintiffs argued that it did not matter whether the driver of the vehicle that killed the children acted negligently or with criminal intent, because the risk of harm from an unsafe fence was the same, and that defendants owed a duty to make the fence stronger. Plaintiffs claimed that the four-foot-high chain link fence surrounding the property failed to protect the children from Abrams's car, and a stronger fence would likely have been allowed under the then current City of Costa Mesa Zoning Code. (Costa Mesa Zoning Code, § 13-75 [requiring planning commission approval of new fence or wall to be constructed adjacent to a public street].) In addition, plaintiffs argued that defendants had not shown as a matter of law that the harm to the children was "wholly unforeseeable," that defendants were unaware of any similar or other criminal incidents that occurred on or around the child care center's property, or that the potential danger was unknown to defendants.

Defendants replied that the prior similar incident involving the mail truck was not a prior similar incident that made Abrams's crime foreseeable. Defendants also responded that the fence in place at the time of the rampage met all code and safety requirements, and was sufficient to stop traffic from

entering the property in most cases. (Health & Saf. Code, § 1596.81; Cal. Code Regs., tit. 22, § 101238.2, subd. (g) [requiring playgrounds to be "enclosed by a fence to protect children and to keep them in the outdoor activity area. The fence shall be at least four feet high"].)[2] Therefore, according to defendants, the fence was sufficient to stop traffic from entering the property in all foreseeable circumstances.

The trial court granted summary judgment for defendants after finding that, under *Ann M., supra,* 6 Cal.4th 666, plaintiffs failed to present evidence of prior similar incidents of violent crime or criminal acts and therefore failed to show defendants owed a duty to prevent Abrams's murderous rampage. The Court of Appeal reversed the judgment, holding that an "errant" motorist careening through the fence accidentally was a foreseeable event, so that defendants' failure to build a stronger fence was a legal cause of the incident here, even though the actual incident was criminal in nature. We granted review.

## Discussion

As indicated, in order to prevail in a negligence action, plaintiffs must show that defendants owed them a legal duty, that defendants breached that duty, and that the breach proximately caused their injuries. (*Ann M., supra,* 6 Cal.4th at p. 673.) In the case of a landowner's liability for injuries to persons on the property, the determination of whether a duty exists, "involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 112–113 [70 Cal.Rptr. 97, 443 P.2d 561]; see Rest.2d Torts, §§ 344, 349.) When children are the focus of care, the landlord's duty is to protect the young from themselves and guard against perils that are reasonably foreseeable. (*McDaniel v. Sunset Manor Co.* (1990) 220

---

[2] In a claim not addressed by the Court of Appeal or raised in a petition for rehearing, plaintiffs claim that because the fence did not stop Abrams's car from entering the child care property, defendants violated the foregoing statute and regulations in failing to protect the children from harm. The alleged statutory violation, plaintiffs claim, was negligence per se. Although we normally will not consider an issue that the Court of Appeal omitted, or that plaintiffs failed to raise in a petition for rehearing (Cal. Rules of Court, rule 29(b)(2)), we note that even if we were to decide the question, the facts unequivocally show that the fence in place at the time of the murders did meet government regulatory standards. (See Cal. Code Regs., tit. 22, § 101238.2.)

Cal.App.3d 1, 7 [269 Cal.Rptr. 196].) "The determination of the scope of foreseeable perils to children must take into consideration the known propensity for children to intermeddle." (*Ibid.*) ■ The existence of a duty and foreseeability, when analyzed to determine the scope of a duty, is a question of law that an appellate court will determine de novo. (*Ann M., supra,* 6 Cal.4th at p. 678.)

Before our decision in *Ann M., supra,* 6 Cal.4th at page 674, the rule in California was that third party criminal acts were not foreseeable without the existence of prior similar incidents. (*Wingard v. Safeway Stores, Inc.* (1981) 123 Cal.App.3d 37, 43 [176 Cal.Rptr. 320].) In 1985, this court appeared to modify the prior similar incidents rule to hold that courts should determine foreseeability under a test that looks to the totality of the circumstances. (*Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 127–129 [211 Cal.Rptr. 356, 695 P.2d 653] (*Isaacs*).)

*Ann M.* recognized, however, that replacing the prior similar incidents rule with a totality of the circumstances test for determining liability confused lower courts, particularly when negligence liability for a third party criminal act would require a landowner to anticipate that a criminal act might occur on the premises. (*Ann M., supra,* 6 Cal.4th at p. 677.) The court stated: "Unfortunately, random, violent crime is endemic in today's society. It is difficult, if not impossible, to envision any locale open to the public where the occurrence of violent crime seems improbable. Upon further reflection and in light of the increase in violent crime, refinement of the rule enunciated in *Isaacs, supra,* 38 Cal.3d 112, is required." (*Ann M., supra,* at p. 678.) The court concluded that the "broad language used in *Isaacs* has tended to confuse duty analysis generally in that the opinion can be read to hold that foreseeability in the context of determining duty is normally a question of fact reserved for the jury. [Citation.] Any such reading of *Isaacs* is in error." (*Ibid.*)

■ *Ann M.* announced the rule we follow today, namely that "California law requires landowners to maintain land in their possession and control in a reasonably safe condition. [Citations.] In the case of a landlord, this general duty of maintenance, which is owed to tenants and patrons, has been held to include the duty to take reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures. [Citations.]" (*Ann M., supra,* 6 Cal.4th at p. 674.) We also observed that "a duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated." (*Id.* at p. 676.)

■ In the case of a criminal assault, *Ann M.* held that the decision to impose a duty of care to protect against criminal assaults requires "balancing

the foreseeability of the harm against the burden of the duty to be imposed. [Citation.] ' "[I]n cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where there. are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required." [Citation.]' [Citation.] Or, as one appellate court has accurately explained, duty in such circumstances is determined by a balancing of 'foreseeability' of the criminal acts against the 'burdensomeness, vagueness, and efficacy' of the proposed security measures." (*Ann M., supra,* 6 Cal.4th at pp. 678–679.)

The plaintiff in *Ann M.* was raped at the photo store where she worked. She then sued the shopping plaza in which the store was located, claiming it had a duty to hire security guards to protect against such crimes. (*Ann M., supra,* 6 Cal.4th at p. 671.) In determining whether a duty was owed, the court balanced the foreseeability of the criminal act against the burden, vagueness, and efficacy of the proposed security precaution. (*Id.* at p. 679.) Some evidence existed of prior crimes in the shopping plaza, including bank robberies, purse snatchings, and a man pulling down a woman's pants, but nothing akin to rape. (*Id.* at p. 671.) We observed that the burden of hiring security guards was extremely high, so high in fact, that the requisite foreseeability to trigger the burden could rarely, if ever, be proven without prior similar incidents. (*Id.* at p. 679.)

In *Sharon P., supra,* 21 Cal.4th 1181, we extended *Ann M.*'s rule, that had been limited to the hiring of security guards, to an action involving a sexual assault at gunpoint that occurred in a subterranean parking garage. (*Sharon P., supra,* at p. 1185.) The attack against the plaintiff had occurred on the premises of a commercial landlord's building that had experienced no prior violent attacks. (*Ibid.*) Although the bank on the property's ground floor had experienced bank robberies in the past, the parking garage assault was the first of its kind on the premises. The plaintiff, however, argued that her injury was foreseeable even in the absence of prior violent attacks. (*Id.* at p. 1191.) She relied on a footnote in *Ann M.* in which we implied that a plaintiff may recover damages if he or she can show that the property was "so inherently dangerous that, even in the absence of prior similar incidents, providing security guards will fall within the scope of a landowner's duty of care." (*Ann M., supra,* 6 Cal.4th at p. 680, fn. 8.) *Sharon P.,* however, rejected the plaintiff's argument for a "per se rule of foreseeability in cases involving underground parking structures." (*Sharon P., supra,* 21 Cal.4th at p. 1192.) The court specifically observed that it was shown no evidence that would allow it to find that the underground parking structure was so inherently dangerous that security guards were required for protection even without prior similar incidents. (*Ibid.*)

*Sharon P.* did acknowledge that two decisions had supported a finding of foreseeability "with regard to assaults occurring on properties that have some history of nonassaultive crime." (*Sharon P., supra,* 21 Cal.4th at p. 1197, citing *Cohen v. Southland Corp.* (1984) 157 Cal.App.3d 130 [203 Cal.Rptr. 572], and *Gomez v. Ticor* (1983) 145 Cal.App.3d 622 [193 Cal.Rptr. 600].) But *Sharon P.* made it clear that extending this broadened view of reasonable foreseeability is warranted only when "it would be reasonable to anticipate that a person would be subject to violent attack if he or she were to be present at an otherwise foreseeable crime on the premises or if he or she were to interrupt such a crime in progress." (*Sharon P., supra,* at p. 1197.)

*Sharon P.* also observed that the broadened foreseeability rule that the plaintiff proposed, would "lead to incongruous results." (*Sharon P., supra,* 21 Cal.4th at pp. 1194–1195.) The court noted that "under the rule advocated by plaintiff, defendants would be saddled with the significant burden of hiring security guards to patrol the underground garage simply because it is an underground garage, without regard to the dissimilarity of the prior criminal incidents elsewhere on the premises or to the garage's 10-year history of crime-free existence. Indeed, such a rule would burden virtually all owners of underground commercial garages in contravention of settled state policy that they, as landlords, should not be forced to become the insurers of public safety." (*Id.* at p. 1195.)

In analyzing the duty and foreseeability issue, the Court of Appeal below disregarded *Ann M.*'s balancing test and distinction between ordinary negligence and prior violent criminal acts, and *Sharon P.*'s carefully considered extension of *Ann M.*, and instead looked to whether defendants' playground was generally vulnerable to "errant traffic." The court placed particular emphasis on the "kind of harm" plaintiffs' children suffered rather than the criminal act itself. The court observed that the nature of the harm—being struck by an automobile driven onto the playground—was not dependent on the driver's criminal state of mind, as the sexual assault in *Ann M.* was dependent on the perpetrator's criminal intent. The court opined that defendants' conduct in failing to erect a sturdier barrier that would have withstood the assault from the car or defendants' failure to move the children to a more protected part of the child care center, resulted in the kind of harm for which negligence liability attaches. (See *Ballard v. Uribe* (1986) 41 Cal.3d 564, 572–573 [224 Cal.Rptr. 664, 715 P.2d 624] [imposing liability on construction company owner for creating unreasonable risk of harm on site by leaving keys in defective machinery].) In other words, the Court of Appeal believed that the harm caused to the children on defendants' premises was foreseeable.

The Court of Appeal and plaintiffs found analogous *Robison v. Six Flags Theme Parks Inc.* (1998) 64 Cal.App.4th 1294, 1301 [75 Cal.Rptr.2d 838]

(*Robison*), which held that when "an observable danger ripens into an accident, the accident is foreseeable for purposes of duty analysis." In *Robison,* the plaintiff was injured at a picnic area located adjacent to a parking lot in the defendant's amusement park. A third party attempted to start his vehicle by pushing it as his developmentally disabled friend drove the car. The friend had never before driven an automobile and when the car started, she could not apply the brakes in time to prevent it from rolling into the picnic area and injuring the plaintiff. The defendant amusement park was found liable in negligence for the plaintiff's injuries after the court determined it was foreseeable that a car could drive into the picnic area because the parking lot was designed with a heavily traveled parking lane that had no separation from the picnic area other than 40 feet of grass. (*Robison, supra,* 64 Cal.App.4th at pp. 1298–1299; see also *Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57–58 [192 Cal.Rptr. 857, 665 P.2d 947] [phone company liable when out-of-control driver struck telephone booth near driveway in parking lot adjacent to freeway].)

Plaintiffs use *Robison* as an example of the kind of harm that should have been guarded against in this action. They assert that a third party's criminal intent is immaterial when looking at the harm that occurred and determining foreseeability. Plaintiffs cite to the mail truck incident and several minor car accidents in front of the child care center in which the· curb and sidewalk adequately kept the car from crashing through the chain link fence onto the property. They argue these incidents were indicative of prior similar incidents that made foreseeable any future occasions of cars crashing through the fence.

■ In relying on *Robison, supra,* 64 Cal.App.4th at pages 1298–1299, the Court of Appeal (and plaintiffs) failed to consider the important differences between the two cases. Specifically, the court did not give due consideration to the *criminal* nature of Abrams's injury-producing act, and thus created a duty test that is far too broad, even when we are dealing with the landowner's duty to protect children from perils that reasonably could have been foreseen. Indeed, *Robison* would not support the Court of Appeal's logic. It is true that in an ordinary negligence action, the precise details of the third party's actions are not overly significant. (*Robison, supra,* 64 Cal.App.4th at p. 1298.) But ours is not an ordinary negligence action. As *Robison* observed, *Ann M.* was inapplicable in that case because the courts look to a higher level of foreseeability of crime in a particular location, as might be indicated by prior similar incidents. (*Robison, supra,* 64 Cal.App.4th at p. 1301.)

In noting that *Ann M.* was based on a criminal act, *Robison* acknowledged that our cases analyze third party criminal acts differently from ordinary negligence, and require us to apply a heightened sense of foreseeability

before we can hold a defendant liable for the criminal acts of third parties. (*Robison, supra,* 64 Cal.App.4th at p. 1301.) There are two reasons for this: first, it is difficult if not impossible in today's society to predict when a criminal might strike. Also, if a criminal decides on a particular goal or victim, it is extremely difficult to remove his every means for achieving that goal. As *Robison* correctly observed, "a criminal can commit a crime anywhere" "but cars cannot crash into picnic tables just anywhere." (*Id.* at p. 1301.) *Robison* made the distinction between acts of ordinary negligence and criminal acts by noting that " [t]he burden of requiring a landlord to protect against crime everywhere has been considered too great in comparison with the foreseeability of crime occurring at a particular location to justify imposing an omnibus duty on landowners to control crime." (*Ibid.*) The court concluded that "[t]here is no legal requirement in [circumstances surrounding a foreseeable accident] for the type of heightened notice which might be provided by a prior similar incident, as *Ann M.* found may be necessary in instances of third party crime." (*Ibid.*)

 Applying *Ann M.*'s balancing test to the present facts, we conclude defendants owed no duty to plaintiffs because Abrams's brutal criminal act was unforeseeable. (*Ann M., supra,* 6 Cal.4th at pp. 676–679.) No evidence indicated defendants' child care facility had ever been the target of violence in the past and no hint existed that either defendants or any other similar business establishment had ever been the target of any criminal acts. Indeed, here, the foreseeability of a perpetrator's committing premeditated murder against the children was impossible to anticipate, and the particular criminal conduct so outrageous and bizarre, that it could not have been anticipated under any circumstances. (See *Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1211–1212 [122 Cal.Rptr.2d 890].)

 One final observation may serve to clarify an additional reason to reject the Court of Appeal's logic in treating this action as an ordinary negligence matter, regardless of the third party criminality that led to the childrens' deaths. This is, even if we were to treat this case as one involving ordinary landlord negligence, and looked at the "kind of harm" the children suffered, rather than the criminal act itself, we would still distinguish the action from *Robison, supra,* 64 Cal.App.4th 1294. There, the property's physical layout, traffic pattern, and inviting recreational area, made an injurious automotive intrusion on the proximately located picnic area foreseeable. By contrast, in the present action, the one freak accident involving a runaway mail truck in which no one was injured could have occurred anywhere, at any time. That fact, together with the evidence indicating the physical layout of defendants' fence and the playground had adequately protected the children against all other intrusions, was simply inadequate to make any automobile intrusion through the fence foreseeable. Although, as we observed in *Sharon P., supra,* 21 Cal.4th at page 1197, some types of crime might be

foreseeable without prior similar incidents, so that a simple security measure might deter a particular act, or foreseeability might be shown by the occurrence of similar nonidentical events, this is not such a case.

CONCLUSION

Plaintiffs have not shown they can prove Abrams's murderous act was foreseeable. Without prior similar criminal acts, or even any indication of prior criminal acts or intrusions of any type in the surrounding businesses, defendants here could not have been expected to create a fortress to protect the children, or to take further steps to deter or hinder a vicious murderer, unconcerned about the safety of innocent children, from committing his crime.

We conclude we should reverse the judgment of the Court of Appeal with directions to affirm the award of summary judgment in defendants' favor.

George, C. J., Kennard, J., Baxter, J., and Brown, J., concurred.

**MORENO, J.,** Concurring.—I agree with the majority that the award of summary judgment in the child care center's favor should be affirmed, and I agree with the "final observation" in the majority opinion that the record before us is "simply inadequate to make any automobile intrusion through the fence foreseeable." (Maj. opn. *ante*, at p. 1150.) In my view, the circumstance that the event that caused the injuries in this case was not foreseeable is all that is necessary to resolve this case.

The majority focuses upon whether the child care center should be absolved from liability because the driver acted intentionally rather than negligently. This is an interesting question, but it is unnecessary to resolve it in this case. If it was foreseeable that children on the playground might be injured by automobiles accidentally entering the playground, and the child care center negligently failed to provide a sufficient barrier to protect the children against this danger, we would be faced with the vexing question of whether the child care center nevertheless should be absolved from liability in this case because the driver of the automobile that entered the playground acted intentionally rather than negligently. But we are not faced with that question in this case, because plaintiffs have not raised a triable issue of fact whether the child care center negligently failed to protect the children against automobiles entering the playground in any fashion.

We should not be eager to base a landowner's liability for an injury caused by a third party upon the mental state of the third party. Such an approach could prove troublesome if the mental state of the third party were difficult to

determine. Consider the example of a property owner who negligently fails to provide a sufficient barrier to prevent automobiles from entering a playground. If an automobile enters the playground and injures a child and the driver is killed, it may be difficult to determine whether the driver acted intentionally or negligently. I am hesitant to adopt a rule that hinges whether a landowner is liable upon the mental state of a third party that causes injury, rather than upon whether the landowner was negligent in failing to guard against the type of danger that caused the injury and whether such negligence was a proximate cause of the injury.

Werdegar, J., concurred.