Filed 8/20/14  Carter v. Brooks CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JOE CARTER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MICHAEL I. BROOKS, et al.,<br><br>    Defendants and Respondents. | B250194<br><br>(Los Angeles County<br>Super. Ct. No. BC485253) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge.  Affirmed.

Franceschi Law Corporation and Ernest J. Franceschi, Jr. for Plaintiff and Appellant.

Hollins & Levy, Byron S. Hollins, Laura M. Levy and Adam L. Robinson for Defendants and Respondents.

_____

Joe Carter appeals from the judgment entered upon the order granting respondents Michael I. Brooks' and the Michael I. Brooks law corporation's motion for summary judgment on Carter's complaint alleging legal malpractice and breach of fiduciary duty. In his complaint Carter alleged, among other things, that respondents committed malpractice and breached fiduciary duties owed to him when respondents failed to timely file a wrongful termination and discrimination complaint on his behalf against Carter's former employer. Respondents filed a motion for summary judgment, arguing that Carter could not demonstrate that he suffered any harm as a result of respondents' conduct because Carter had released his former employer from liability for all claims and causes of action relating to his employment prior to retaining respondents to represent him. As we shall explain, summary judgment was properly granted because respondents presented admissible evidence to show that Carter had signed a severance agreement and release of all claims at the time he was terminated well before Carter hired respondents. Appellant failed to present admissible evidence to raise a triable issue to show that the severance agreement was invalid or otherwise did not apply to discharge his former employer for liability for claims of wrongful termination or employment discrimination. Accordingly, we affirm.

### FACTUAL & PROCEDURAL BACKGROUND

#### A. Carter's Employment, Termination and Severance Agreement and Release

In October 2004 Carter, who is African-American, was hired as at "at-will" employee by McMillin Homes/Bakersfield Residential Builders[1] (hereinafter McMillin), a residential development and construction company to perform "prep detail" on new homes in Bakersfield.[2] In late January 2008 after several employees had been laid off in

---

[1]    Respondents' undisputed material fact No. 1, in support of the motion for summary judgment states that Carter was hired by "McMillin Homes/Bakersfield Residential Builders." Carter did not dispute this fact in the trial court.

[2]    Carter's employment application and pre-employment documents identified his employer interchangeably as "The Corky McMillin Companies," "McMillin" and the "McMillin Companies."

the prior months, McMillin laid Carter off.[3]  At the time, McMillin indicated Carter was eligible to be rehired.

When he was terminated, Carter was issued his final paycheck.  In addition, Carter signed a severance agreement with McMillin in exchange for three weeks of severance pay; he was also issued a check for $1,680.  The checks issued to Carter were paid on the account of "McMillin Bakersfield Residential Builders, LP."  The severance agreement, which was signed by Bakersfield Residential Builders LP and by "McMillin Homes Construction, Inc., a California Corporation," as the general partner of "Bakersfield Residential Builders, L.P., a California Limited Partnership," included a general release of "any and all" claims, including those based upon racial discrimination, and a waiver of Civil Code section 1542.  The severance agreement also provided that Carter had seven days to revoke the release and waiver (hereinafter the Severance Agreement).[4]

---

[3]     When laid off, Carter was one of two employees in the quality control department, both of whom were African-American.

[4]     The Severance Agreement provided, in relevant part, that:

"7.  **Consideration:** In exchange for the promises contained in this Agreement, Employee agrees that s/he or any person acting by, through, or under him/her releases Employer, its parents, subsidiaries, affiliates, directors, officers, employees, attorneys and agents from any and all claims Employee has against it and agrees that s/he will not institute any action or actions, cause or causes of action (in law or equity), suits, debts, liens, claims, demands, known or unknown, fixed or contingent, which he may have or claim to have in state or federal court, or with any state, federal or local government agency or with any administrative or advisory body arising from or attributable to Employer or its parents, subsidiaries, affiliates, directors, officers, employees, attorneys or agents, and all persons acting by, through, under, or in concert with them, including but not limited to, all claims for compensation due for any services performed by employee for employer.

"8.  **General Release:** In consideration of the terms stated in paragraphs 1 through 9 of this Agreement and Release, Employee . . . hereby forever releases, waives, discharges and covenants not to sue Employer or any of its predecessors, successors, parent entities, subsidiaries, related entities of any nature . . . legal successors . . . and any person or entity which may succeed to the rights and liabilities of such entities by

3

Thereafter, in early February 2008, Carter filed for unemployment benefits. He stated that the reason for his separation from McMillin as "Lay Off. Lack Of Work." His employer is listed as "Bakersfield Residential."

### B. *Carter's Discrimination Claim and Carter's Retention of Respondents*

On February 13, 2008, Carter filed a claim for discrimination against McMillin with the California Department of Fair Employment & Housing (DFEH). In his DFEH complaint Carter listed his employer as "Bakersfield Residential Builders." In the

---

assignment or otherwise, with respect to any and all claims, assertions of claims, debts, demands, actions, suits, expenses, attorneys' fees, costs, damages, and liabilities of any nature, type and description whatsoever, in law, equity or otherwise . . . whether known or unknown, vested or contingent, suspected or unsuspected, that Employee now has, may now have, or may acquire in the future, which relate to or arise out of any act, omission, occurrence, condition, event, transaction or thing which was done, occurred or was in effect at any time from the beginning of time to and including the date of the execution by Employee of this Agreement. Employee expressly acknowledges that all claims are forever barred by this Agreement and without regard to whether these claims are based on any alleged breach of duty arising out of contract or tort; personal injury, wrongful termination in violation of public policy or otherwise, . . . any alleged employment discrimination or unlawful discriminatory act; or any claim or cause of action, including but not limited to: any and all Claims arising under federal, state or local constitutions, laws, rules or regulations or common law prohibiting breach of employment contract, wrongful termination, or employment discrimination based upon . . . . race, color, . . . or any other protected category or characteristic; . . . or the Federal Fair Labor Standards Act, the California Fair Employment and Housing Act (Gov. Code 12900 et seq.) or any state statute of similar effect; . . . and other applicable discrimination laws, whether or not mentioned herein specifically, and all claims for wages, monetary or equitable relief or other damages of any kind, vacation pay, other employment fringe benefits or attorneys' fees.

"9. Employee acknowledges that this is a full and final release and that Employee intends and expressly agrees that it shall be effective as a bar to every claim, demand, and cause of action the Employee has against Employer as of the date of this Agreement and Release. Employee also expressly waives all rights and benefits conferred on Employee now or in the future under California Civil Code §1542, which provides as follows: [Statutory language omitted] Employee expressly declares and represents that s/he has read this paragraph, that s/he fully understands the effect of this waiver of the rights and benefits of Civil Code section 1542, and that the Employee knowingly, freely and voluntarily waives and relinquishes such rights and benefits."

complaint, Carter stated that he ". . . believe[d] that [he] was laid off because of [his] race (African-American) for the following reasons: [¶] A. Of the two detail persons I was the only one laid off. [¶] B. Although the practice is to layoff those who are not performing, my performance was praised. [¶] C. Therefore, I believe I was selected for layoff solely because of my race."

McMillin responded to the DFEH's notice of the complaint, requesting that the matter be closed as plaintiff was "laid off due to a slow down in work and sales in the industry." McMillin's response further stated that Carter had signed a release of any claims. Finally, McMillin's response stated that there was another employee in the same job category who was retained and who was African American.

In March 2008, DFEH sent a letter to Carter indicating that their "investigation did not reveal sufficient evidence or information to establish that a violation occurred;" the DFEH also provided Carter with a "right to sue" letter on April 2, 2008.

Thereafter Carter hired respondents to act as his legal counsel to file a wrongful termination action on his behalf against McMillin. Carter claimed that respondents employed a former attorney, Antonio Alvardo,[5] who met with Carter several times regarding the proposed litigation against McMillin. Carter further alleged that from 2008 through mid-2011 when he met with Alvardo, Carter was led to believe that respondents had filed an action on his behalf and were actively prosecuting the wrongful termination claims against McMillin. Carter claimed that in June 2011 he discovered that respondents had never filed an action against McMillin.

### C. Carter's Action Against Respondents

In May 2012, Carter filed the present action alleging causes of action for legal malpractice and breach of fiduciary duty against respondent Michael Brooks and his law corporation. Carter filed a first amended complaint alleging damages as a result of respondents' purported failure to file the underlying employment law action.

---

[5] Carter alleges that Alvardo resigned from the State Bar of California in 1986 with disciplinary charges pending against him.

In September 2012, respondents served written discovery on Carter seeking all facts supporting his purported wrongful termination. Carter responded to interrogatories and requests for admission, naming "Bakersfield Residential Builders" as his former employer.

At his deposition in November 2012, Carter was asked to identify his former employer, and he responded: "I worked for McMillin Homes, home builders, residential home builders." Later in the deposition when he was asked: "Who is Bakersfield Residential Builders?" The following exchange occurred:

"[Carter:] That's McMillin
"Q. They go by another name, is that it?
"[Carter:] Bakersfield Residential Builders, McMillin Home Builders.
"Q. Who did you receive your check from?
"[Carter:] I think it was Bakersfield – Bakersfield Home Builders? McMillin? I don't know. I never really looked at it."

Respondents sought documents pursuant to subpoena from McMillin regarding Carter's employment. McMillin produced, among other documents, the Severance Agreement. Thereafter, at his deposition, Carter was asked if the signature on the Severance Agreement was his to which he testified, "I'm not sure. It doesn't look like it." When asked why he said he did not believe the signature looked like his, he testified "I don't know. I'm not a great writer but it looks almost like a scribble."

Respondents filed a motion for summary judgment. Respondents asserted they were entitled to summary judgment because Carter could not establish the causation and harm elements of his causes of action for legal malpractice and breach of fiduciary duty. Respondents based the motion for summary judgment on the alternate theories that: (1) Carter had signed the Severance Agreement with McMillin which included a release of all claims and a waiver of Civil Code section 1542 which precluded any underlying claims against McMillin for wrongful termination; (2) Carter had failed to produce any evidence supporting his purported wrongful termination; and (3) McMillin had a legitimate, non-discriminatory basis for the termination.

6

Carter filed his opposition to the motion. Carter also filed objections to respondents' evidence, all of which the trial court ultimately overruled. Carter's opposition asserted that he had a tenable underlying case for wrongful termination against McMillin, arguing that: (1) he had set forth a prima facie case for discrimination; (2) the economic necessity set forth by McMillin was pretextual; and (3) the Severance Agreement did not release his *actual* employer and there was a question of fact as to whether plaintiff signed the Severance Agreement. In support of his opposition, Carter relied upon his own declaration and the declarations of a co-worker Perris Cunningham, Carter's legal counsel Ernest J. Francheschi Jr. and attorney Tom Moser – his expert witness on employment law and litigation.

Regarding the severance agreement, Carter declared: "At the time of my termination meeting, I was given two checks, one in the amount of $1,935.05 representing my regular paycheck and a second one for $1,680 which I was told was for severance pay. I was asked to sign documents, the purpose of which I was told to 'acknowledge receipt' of my check. I was not allowed to take the time to fully read the papers which I signed or to discuss them with counsel or anyone else. Moreover I was not provided with a copy of the documents which I executed. [¶] At no time during my termination meeting was I told that any of the documents that I was asked to sign constituted a release of claims, nor was I told that the severance pay was conditioned on execution of a release."

With respect to his signature on the Severance Agreement, Carter's declaration states: "I have examined the signature . . . on the purported 'Severance Agreement' which Defendants claim I signed. The signature on this document does not appear to be mine and I do not recall signing this document. Moreover, the signature . . . is materially different from my own signature on other documents submitted by Defendants. . . . [¶¶] Although I have substantial doubt that I signed [the Severance Agreement] if I did, I did not understand this document to constitute a release of claims, nor was it my intent to release my former employer of any claims whatsoever. It was my understanding and belief that the severance pay was being provided to me as an appreciative gesture on the

7

part of McMillin for having for [sic] been a good and hard working employee since 2004."

The declaration of Carter's legal counsel Ernest Franchesci purported to authenticate exhibits submitted in opposition to the summary judgment motion, including a printout from the California Secretary of State's website regarding the status of Bakersfield Residential Builders LP.  The printout discloses a "date filed" as 05/14/2003, and also indicates the "status" of the entity as "converted-out" (Exh. 3).[6]

Carter also submitted an additional disputed "material facts."  The first ten of these additional "facts" dealt with Carter's beliefs regarding the Severance Agreement, including the admission that he signed documents at the time he was let go by McMillin and his equivocating responses regarding him not believing the signature on the settlement agreement was his.  Carter's additional fact No. 7 stated that his employer was "The Corky McMillin Companies."[7]

Respondents filed a reply to Carter's opposition, a reply to the separate statement and objections to Carter's evidence submitted in opposition to the motion for summary judgment.  Respondents asserted objections to the entire declaration of Tom Moser; to Carter's counsel, Franceschi's declaration purporting to authentic exhibits; and to Exhibit 3 (the printout from the Secretary of State) as lacking foundation, lacking of authentication, and relevance.

On May 7, 2013, after a hearing on the motion, the trial court adopted its tentative ruling granting the motion.  The court sustained respondents' objections, among others, to Tom Moser's declaration, Exhibit 3, and to Franceschi's declaration – (the court found that Franceschi failed to properly authenticate Exhibit 3).  In granting the motion the

---

[6]     In his opposition to the motion for summary judgment, Carter argued: "[o]f significant importance, is the fact the Secretary of State website shows Bakersfield Residential Builders, LP, was 'converted out' on May 14, 2003, and therefore could not have been Plaintiff's employer when he was hired in 2004, or anytime thereafter."

[7]     Carter cited as his evidentiary support for this fact his employment application and the declaration of his expert witness Tom Moser.

8

court concluded that respondents had met their burden of showing that Carter's claims had no merit: "Specifically, Defendants submitted evidence showing Plaintiff signed a Severance Agreement releasing all claims against his former employer, including claims for race discrimination and wrongful termination before he purportedly retained Defendants. Consequently, plaintiff cannot establish he would have obtained a more favorable judgment against his former employer and/or that Defendants caused his damages." The court concluded that Carter had failed to submit admissible evidence to create a triable issue of material fact as to the validity of the Severance Agreement, or the fact that he executed the agreement. The court found that Carter had failed to raise a "doubt" about the identity of his employer, noting that all of the evidence submitted, including his discovery responses and other documentary evidence showed that Carter worked for one of the McMillin Companies, and that the Severance Agreement was sufficiently broad to release all of the McMillin Companies. The court also found that Carter had failed to raise a triable issue fact as to whether he signed the Severance Agreement. The trial court subsequently entered judgment in favor of respondents.

Carter timely filed his notice of appeal.

### DISCUSSION

Carter argues that the trial court erred in granting summary judgment for respondents on his causes of action for malpractice and breach of fiduciary duty. Appellant contends he presented a triable issue regarding (1) the identity of his employer, that is, whether he released his *actual* employer for all claims; (2) whether the Severance Agreement was valid; and (3) whether he signed the Severance Agreement.

#### A. The Summary Judgment Standard of Review

On appeal from an order granting summary judgment, we apply a *de novo*, or independent standard of review to determine whether triable issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*); *Wiener v. Southcoast Childcare Ctrs., Inc.* (2004) 32 Cal.4th 1138, 1142.) "In ruling on the motion, the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn

9

therefrom, and must view such evidence and such inferences in the light most favorable to the opposing party." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.) As such, the court will "liberally construe plaintiff's evidentiary submissions and strictly scrutinize defendants' own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiffs' favor." (*Wiener*, *supra*, 32 Cal.4th at p. 1142.) We must consider "all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) Any ruling by the trial court on the admissibility of such evidence will be reviewed under the abuse of discretion standard. (*Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1111; but see *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 [suggesting that a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings may be reviewed under the de novo standard of review rather than abuse of discretion.)[8]

Ultimately, the purpose of summary judgment is to "provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar*, *supra*, 25 Cal.4th at p. 844.) "A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is an affirmative defense to that cause of action." (Code Civ. Proc., § 437c, subd. (o); *Aguilar, supra*, 25 Cal.4th at p. 850.) If the defendant meets that burden, then the burden shifts to the plaintiff to make a prima facie showing that a triable issue of fact exists as to the cause of action set forth. (*Id.* at p. 849.)

"There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. (*Aguilar, supra*, 25 Cal.4th

---

[8]     In this case, under either standard of review our conclusion would be that same.

10

at p. 850, fn. omitted.) "The court may not 'grant[ ]' the defendants' motion for summary judgment 'based on inferences . . . , if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.'" (Code Civ. Proc., § 437c, subd. (c); *Aguilar, supra*, 25 Cal.4th at p. 856.) Consequently, a defendant moving for summary judgment must "present evidence that would require . . . a trier of fact not to find any underlying material fact more likely than not." (*Id.* at p. 845.)

With these principles in mind we turn to the merits.

### B. The Trial Court Properly Granted Summary Judgment for Respondents on the Malpractice Cause of Action

To prevail on his legal malpractice claim, Carter must prove four elements: "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence. [Citations.]" (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199-1200.) "[F]ailure to prove[ ] any of [the elements] is fatal to recovery." (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1682.)

Here the question presented is whether the evidence established the absence of any triable issue as to causation and damages.

"In the legal malpractice context, the elements of causation and damage are particularly closely linked." (*Hecht, Solberg, Robinson, Goldberg & Bagley LLP v. Superior Court* (2006) 137 Cal.App.4th 579, 591.) The plaintiff must prove, by a preponderance of the evidence, that but for the attorney's negligent acts or omissions, he would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred. (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241.) This standard requires a "trial-within-a-trial" of the underlying case, in which the malpractice jury must decide what a reasonable jury or court would have done if the underlying matter had been tried. (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 834.) This method "'is the most effective safeguard yet devised against speculative and conjectural claims. . . . It is a standard of proof designed to limit damages to those

11

actually caused by a professional's malfeasance. . . .'" (*Jalali v. Root* (2003) 109 Cal.App.4th 1768, 1773-1774.)

Because causation is a question of fact for the jury, it ordinarily cannot be resolved on summary judgment. (*Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 288.) In legal malpractice claims, the absence of causation may be decided on summary judgment "only if, under undisputed facts, there is no room for a reasonable difference of opinion." (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 864.)

In the motion for summary judgment respondents argued that they were entitled to judgment as a matter of law on the malpractice claim because Carter could not prove that he suffered injury as a result of respondents' failure to file a lawsuit against Carter's former employer for wrongful termination. Respondents presented evidence of the Severance Agreement which Carter apparently executed, prior to retaining respondents, in which he released his "Employer or any of its predecessors, successors, parent entities, subsidiaries, related entities of any nature [. . .] legal successors" for all claims arising out of the employment relationship, including claims of wrongful termination. Based on the Severance Agreement, respondents argued that had they filed wrongful termination and discrimination claims against McMillin, the claims would have failed because Carter released those claims in the Severance Agreement.

Carter maintains, however, that he raised triable issues of material fact as to respondents' Severance Agreement defense theory. Carter argues he demonstrated triable issues as to the validity of the release and Severance Agreement, whether he released his actual employer, and whether he signed the release.

### 1.    *Identity of Carter's Employer*

Carter does not dispute that Bakersfield Residential Builders LP was a party to the Severance Agreement. Carter also does not controvert that the Severance Agreement was executed by Bakersfield Residential Builders LP and McMillan Homes Construction, Inc., as the General Partner of Bakersfield Residential Builders LP. Likewise Carter does not contest the release extended to all claims including claims for discrimination and wrongful termination. Instead, Carter argues to this court that he presented evidence in

12

opposition to summary judgment to demonstrate a triable issue of fact as to the actual identity of his employer.

Carter, relying on the declaration presented in support of his opposition to summary judgment, his original employment application and the declaration of his expert Tom Moser,[9] asserts that he was employed by "The Corky McMillin Companies." It appears that Carter is arguing that the Severance Agreement did not extend to the "The Corky McMillin Companies," and therefore it did not operate as a release of his claims against them. Carter's argument is not persuasive; he has not demonstrated a triable issue of fact as to the identity of his employer.

Carter's claim that "The Corky McMillin Companies" was his actual employer is contradicted by Carter's discovery responses. All of the other uncontroverted evidence presented demonstrates that Carter worked for "McMillin Homes/Bakersfield Residential Builders." In his request for unemployment benefits and in his DFEH complaint he listed his employer as "Bakersfield Residential Builders." The McMillin Company responded to the DFEH's inquiries on behalf of Bakersfield Residential Builders.[10] In addition, Carter's deposition testimony indicated that Carter knew "Bakersfield Residential

---

[9]      On appeal Carter has not assailed the trial court's ruling sustaining respondents' objections to Tom Moser's declaration. As a result, in this court Carter cannot rely upon evidence contained in Moser's declaration to support his argument that there is a triable issue of fact as to the true identity of his employer.

[10]      Respondents astutely point out that assuming the truth of Carter's point that he worked for "The Corky McMillin Companies" rather than "Bakersfield Residential Builders," Carter's malpractice action against them would fail for another reason—namely, because Carter would have failed to exhaust his administrative remedies under the Government Code against his employer prior to filing a legal action. (See *Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1724 ["Under California law 'an employee must exhaust the . . . administrative remedy' provided by the Fair Employment and Housing Act, by filing an administrative complaint with the California Department of Fair Employment and Housing (DFEH) (Gov. Code, § 12960; cf *id*., §§ 12901, 12925, subd. (b)) and obtaining the DFEH's notice of right to sue (*id*., § 12965, subd. (b)), 'before bringing suit on a cause of action under the act or seeking the relief provided therein . . . .' [Citations.]"].)

13

Builders" was related to "McMillin." (See *Thompson v. Williams* (1989) 211 Cal.App.3d 566, 574 [holding that assertion of facts contrary to prior testimony does not constitute substantive evidence of the existence of a triable issue of fact].) Moreover, Carter did not dispute respondents' undisputed fact (in support of its motion for summary judgment) that identified Carter's employer as "McMillin Homes/Bakersfield Residential Builders."

In any event, even assuming that Carter worked for "The Corky McMillin Companies" rather than Bakersfield Residential Builders, Carter has failed to raise a triable issue of fact to show that the Severance Agreement and release did not apply to "The Corky McMillin Companies." By its own terms the Severance Agreement's release applied to "any of [Bakersfield Residential Builders LP] predecessors, successors, parent entities, subsidiaries, related entities." Carter does not dispute that the release applies to entities that are related to Bakersfield Residential Builders, or that McMillin Homes is the general partner of Bakersfield Residential Builders.

In view of the foregoing, Carter failed to present a triable issue of fact as to the actual identity of his employer. The uncontroverted evidence showed that the Severance Agreement applied to Carter's employer.

### 2. *Validity of the Severance Agreement*

Carter also argues that he presented a triable issue as to whether Bakersfield Residential Builders LP could enter into a contract to release claims. In opposition to the motion for summary judgment Carter presented Exhibit No. 3, a copy of a printout from the Secretary of State website which he claims shows that Bakersfield Residential Builders, LP was not a valid corporate entity as of May 2003, even before Carter worked for them.

The trial court granted respondents' objection to this document concluding that Carter had not properly authenticated the printout. We agree.

Carter failed to demonstrate that the information contained on the printout document was a true or accurate representation of Bakersfield Residential Builders' legal status. Indeed, Exhibit No. 3, states that "the data provided is not a complete or certified record of an entity." (*People v. Beckley* (2010) 185 Cal.App.4th 509, 517-518 [Rejecting

14

as unauthenticated and irrelevant printouts from the Internet purporting to display a "gang roster" showing both defendants as members of the gang; and concluding that although the printout may be an accurate representation of the Web page found on the Internet, "[t]he issue, however, was not whether the computer's printer could be trusted to reliably print out what was on the computer's screen or stored on some site but whether the content of what was on the site was reliable."].)

In addition, Carter failed to provide a foundation for Mr. Franceschi's conclusion that Bakersfield Residential Builders was converted out on "May 14, 2003."  The definition provided from the California Secretary of State website for the "date filed" field is as follows: "Date Filed: The date of formation of a California (domestic) business entity, the date of qualification or registration of a foreign (out-of-state or out-of-country) business entity doing business in California, the date of registration of a domestic or foreign limited partnership, or the date a business entity converted to a California corporation, California limited liability company or California limited partnership."  There was no evidence at all submitted to show when Bakersfield Residential Builders "converted out."  Thus, the meaning of "date filed" is ambiguous.

In any event, Carter has not shown that the evidence on the printout, even if accurate, is relevant to the outcome.  Even if Bakersfield Residential Builders had "converted-out," he has not shown that Bakersfield Residential Builders lacked the capacity to employ Carter or execute a Severance Agreement.  The Secretary of State website defines "converted-out" as: "The business entity converted to another type of business entity or to the same type under a different jurisdiction as provided by statute."  There is no evidence here that, at any point, Bakersfield Residential Builders was an entity incapable of entering into contracts.

Under Corporations Code section 15911.09:

"(a)  An entity that converts into another entity pursuant to this article is, for all purposes . . . the same entity that existed before the conversion and the conversion shall not be deemed a transfer of property.

15

"(b)  Upon a conversion taking effect, all of the following apply:

"(1)  All the rights and property, whether real, personal, or mixed, of the converting entity or converting limited partnership are vested in the converted entity or converted limited partnership.

"(2)  All debts, liabilities, and obligations of the converting entity or converting limited partnership continue as debts, liabilities, and obligations of the converted entity or converted limited partnership.

"(3)  All rights of creditors and liens upon the property of the converting entity or converting limited partnership shall be preserved unimpaired and remain enforceable against the converted entity or converted limited partnership to the same extent as against the converting entity or converting limited partnership as if the conversion had not occurred.

"(4)  Any action or proceeding pending by or against the converting entity or converting limited partnership may be continued against the converted entity or converted limited partnership as if the conversion had not occurred."  (Corp. Code, § 15911.09.)

Thus, it appears that under the Corporations Code, the successors of Bakersfield Residential Builders were entitled to all the rights of property of that entity and liable for all of its liabilities.  There is no code provision cited by Carter providing that a "converted out" entity loses its rights regarding agreements.  Accordingly, Cater has not shown that this fact is relevant to a material issue.

Accordingly, we conclude that Carter failed to raise a triable issue of fact as to the validity of the Severance Agreement.

### 3. *Appellant's signature*

Carter asserts that he presented a triable issue of fact as to whether he executed the release.  In his deposition Carter testified that he was unsure whether the signature on the Severance Agreement was his because it did not look like his signature, it looked like a "scribble."  In his declaration Carter stated that the signature on the Severance Agreement did not appear to be his and he did not recall signing the severance agreement.

16

Nonetheless, Carter does not dispute that the Severance Agreement specifies that Carter would not receive his Severance Pay until he executed the Severance Agreement. Carter also conceded that he signed "documents" and received "severance papers" at the time he was terminated and in return he received his severance pay: "I was asked to sign some documents, the purpose of which I was told was to 'acknowledge receipt' of my check."

In our view, Carter's self-serving evidence regarding the signature is insufficient to raise a triable issue of material fact. His failure to recall whether he signed the Severance Agreement coupled with his uncertainty about the signature do not give rise to a reasonable inference sufficient to contradict the uncontroverted evidence presented by respondents that Carter received the severance payment in exchange for him executing the Severance Agreement when he was terminated. (See *DiLoreto v. O'Neill* (1991) 1 Cal.App.4th 149, 160 [appellant's claim that she could not remember signing the employment agreement to retain respondent and that she was uncertain the signature on the contract was hers was insufficient to raise a triable issue of fact as to the existence of the contract in view of the fact that appellant received the benefit of the respondent's performance under the contract and that the contract contained a signature which appellant never unequivocally denied was her signature].) In sum, Carter failed to present a triable issue of fact with respect to the signature on the Severance Agreement.

*C.*     ***The Trial Court Properly Granted Summary Judgment for Respondents on the Breach of Fiduciary Duty Cause of Action***

To prove a claim for breach of fiduciary duty against an attorney, a former client must plead and ultimately prove: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damages proximately caused by that breach. (*Mosier v. Southern California Physicians Insurance Exchange* (1998) 63 Cal.App.4th 1022, 1044.)

To the extent that Carter's cause of action for breach of fiduciary duty relies on the same conduct as alleged in the malpractice action, i.e., the failure to timely file and prosecute the wrongful termination and race discrimination claims against Carter's former employer, the court properly granted summary judgment because Carter cannot

17

prove damages or causation. Carter's release of his claims against his employer would foreclose any claim he might have against respondents for breach of fiduciary duty.

With respect to the breach of fiduciary duty claim based on Carter's allegations that respondents employed Alvarado, an unlicensed attorney, to work in their office, and that employment of Alvarado violated the rules of professional conduct, Carter claims that had he known that Alvarado could not have practiced law he would not have retained respondents to "handle his case."

This allegation fails as a matter of law because uncontroverted evidence demonstrates that Carter cannot prove this conduct damaged him because it, like the malpractice cause of action, depends on the merit of his underlying case against his employer. As discussed elsewhere here, the underlying case would not have succeeded because Carter had already released his employer prior to seeking legal counsel. Furthermore Carter did not allege any additional damage or harm, aside from failing to file his case timely that occurred as a result of respondents' retention of Alvarado. The lack of a separate, compensable harm is fatal to this claim.

In view of all of the foregoing, the trial court did not err in granting summary judgment.

### DISPOSITION

The judgment is affirmed. Respondents to recover costs on appeal.


**WOODS, J.**


**We concur:**



**PERLUSS, P. J.**                                    **ZELON, J.**


18