Filed 6/28/16  JSA Depot v. Foreverlawn CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JSA DEPOT, INC., et al., | |
| Plaintiffs and Appellants, | G050701 |
| v. | (Super. Ct. No. 07CC06601) |
| FOREVERLAWN, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Mary Fingal Schulte, Judge.  Reversed.

Gaston & Gaston and Matthew J. Faust for Plaintiffs and Appellants.

Buchalter Nemer, Robert M. Dato, Kalley R. Aman, and Sarah A. Syed for Defendant and Respondent.

\*         \*         \*

This is the third appearance here of this case.  In a prior appeal, we reversed a $987,000 judgment in favor of plaintiffs JSA Depot, Inc. (JSA), and Foreverlawn of Southern California, Inc. (FSC), due to the insufficiency of the evidence to support the damages award.  (See *JSA Depot, Inc. v. Foreverlawn Inc.* (Aug. 31, 2011, G044164) [nonpub. opn.] (*JSA Depot I*).)  We remanded the matter "for a new trial on the amount of damages only."  (*Ibid.*)

After remand, plaintiffs petitioned this court for a writ of prohibition to challenge an order of the trial court.  We issued an opinion (*JSA Depot, Inc. v. Super. Ct.* (Apr. 19, 2013, G047288) [nonpub. opn.] (*JSA Depot II*)), in which we explained, inter alia, that the scope of the new trial on damages encompassed the question of whether plaintiffs' losses were *caused* by defendant Foreverlawn Inc.'s breach of an obligation it owed to plaintiffs.

Now, plaintiffs appeal from a judgment entered in defendant's favor.  As we shall explain, we reverse because the trial court erred in granting defendant's summary judgment motion.  Defendant did not meet its initial burden of production because it failed to show plaintiffs did not possess, and could not reasonably obtain, sufficient evidence to support any amount of damages.[1]

FACTS

*Prior Proceedings, Including JSA Depot I and JSA Depot II*

In December 2005, defendant and JSA entered into a contract whereby defendant granted JSA an exclusive license to sell defendant's artificial turf in several counties in California and Nevada.  (*JSA Depot I*, *supra*, G044164.)  Plaintiffs sought

_____

[1] Because we reverse the judgment, we do not address plaintiffs' alternative argument that the court erred by denying JSA's motion for a new trial after the court granted defendant's summary judgment motion.

damages at trial pursuant to several causes of action, including breach of contract and of the implied covenant of good faith and fair dealing, and interference with contract/prospective economic relations. (*Ibid*.) The jury found defendant liable to JSA and FSC in the combined amount (after a posttrial elimination of duplicative damages by the trial court) of $987,000. (*Ibid.*) Defendant appealed.

In *JSA Depot I*, *supra*, G044164, *we* noted that defendant "does not dispute it breached the express and implied terms of its contract with JSA, interfered with JSA's contracts with its subdealers, and interfered with FSC's potential economic relations." (*Ibid*.) But we concluded there was no substantial evidence to support the amount of damages awarded by the jury. (*Ibid.*) We remanded for a new trial on the issue of the amount of damages only. (*Ibid*.)

On remand, defendant moved in limine to exclude evidence of alleged lost future damages upon retrial. Defendant's brief argued "the contract between the parties was terminated in July 2007 and *there was no finding by the jury that the termination was a breach of contract*." The trial court ruled: "Motion to Exclude Evidence of Damages for alleged lost profits is denied. As the jury in this case found that Plaintiff did all or substantially all of the significant things that the contract required it to do (Verdict Forms) there is a sufficient basis for this court to find that termination of the agreement constituted a breach. As the termination was invalid, evidence of post-termination damages are admissible."

Plaintiffs filed their own motion in limine, seeking to determine the scope of the retrial on damages. Plaintiffs argued the trial court should exclude defendant's evidence it did not breach the contract because the issue of liability had already been resolved in plaintiffs' favor. (*JSA Depot II*, *supra*, G047288.) The trial court ruled it would admit evidence of liability relevant to "tie" damages to the eight defined categories of alleged breaches of contract. (*Ibid*.) Plaintiffs challenged the trial court's ruling by petitioning this court for a writ of prohibition and/or other appropriate relief. (*Ibid*.)

3

In *JSA Depot II*, *supra*, G047288, we denied plaintiffs' writ petition on the issue of causation of damages.[2] We observed that evidence relevant to whether plaintiffs' alleged losses were *caused* by defendant's acts and omissions was admissible under the Evidence Code and we saw "no reason to issue a writ of mandate ordering the court to follow the Evidence Code in conducting the trial." (*Ibid.*)

*The Current Appeal*

1. Defendant's Motion for Summary Judgment

On March 6, 2014, defendant moved for summary judgment "on the grounds that no triable issue of material fact exists to support the elements of causation and harm required to prove the four causes of action upon which [defendant] was found liable at trial."

Attached to defendant's summary judgment motion were (1) excerpts from the reporter's transcript of the first trial and defendant's counsel's declaration declaring such excerpts were true and correct copies; (2) defendant's counsel's April 10, 2007 letter notifying JSA and its counsel that JSA had defaulted under the contract and would be required to "move" 172,000 square feet of turf to cure the default; (3) defendant's request for judicial notice of (a) certain jury instructions given in the March 2010 trial in *JSA Depot I*, (b) the jury verdict, and (c) *JSA Depot I*, and (4) defendant's separate statement of undisputed material facts (SSUMF).[3]

---

[2] We did, however, issue a writ of prohibition precluding the trial court from including defendant's cross-complaint in the damages retrial, because the trial court lacked jurisdiction to do so in the limited retrial defined by *JSA Depot I*. (*JSA Depot II*, *supra*, G047288) During the first trial, defendant had dismissed its cross-complaint "on the condition plaintiffs not call additional witnesses." (*Ibid.*)

[3] The reporter's transcript excerpts consisted of (1) the testimony of Matthew Mighell, a principal in JSA, that defendant terminated the contract in July 2007 because JSA had failed to meet the benchmarks of selling enough turf; (2) the testimony of Evette

4

In defendant's memorandum of points and authorities supporting its summary judgment motion, defendant argued no competent evidence had existed at trial to show damages causally linked to the claims on which plaintiffs had prevailed at trial, "and no new evidence exists now . . . ." Defendant asserted the trial court in the first trial had instructed the jury that JSA claimed damages for each of those four causes of action in two categories: "(1) past lost expected profits during the term of the contract . . . , and (2) post-contract losses, including loss in expected profits after the termination of the contract . . . ." In support, defendant referenced its SSUMF Nos. 12, 33, 53, and 69. Defendant argued the damages awarded by the jury "did not match any amounts requested by Plaintiffs and could not be tied to any figures presented at trial." According to defendant, *JSA Depot I* "held there was no competent evidence to support any item of damages awarded by the jury and that all of the damages were speculative, remote, unreasonable, contingent, and hypothetical. [SSUMF Nos. 16, 37, 56, 72]." As to the legal standard on summary judgment, defendant stated, inter alia: "Furthermore, under the doctrine of 'law of the case,' any principle or rule of law stated in an appellate court opinion that is 'necessary' to the court's decision must be followed in all subsequent proceedings in the action, whether in the trial court or on a later appeal."

Defendant's memorandum then discussed in more detail the four causes of action on which plaintiffs had prevailed at the first trial. As to plaintiff's breach of contract and breach of implied covenant claims, defendant discussed the specific types of

Reyes, the bookkeeper and office manager for FSC and JSA, testifying she is not a certified public accountant, does not have a bachelor's degree in accounting or finance, and is not a licensed or certified bookkeeper, and that she prepared a 10-year forecast of JSA's projected net future income; (3) the testimony of Dale Karmie that defendant continued to pay commissions to Mighell even after defendant had adjusted JSA's territory; and (4) conversations between the court and counsel in which the court excluded an FSC and a JSA projection of future income, but refused to exclude a similar document that had already been admitted into evidence.

The trial court granted defendant's request for judicial notice.

5

damages it asserted *JSA Depot I* had purportedly found to be unsupported and incapable of ever being supported. Defendant asserted *JSA Depot I* found "JSA *could not* establish that any of its customer contracts were canceled due to [defendant's] late delivery of turf or delivery of defective turf. [SSUMF Nos. 17, 38.]"[4] (Italics added.) Defendant asserted *JSA Depot I* made three other findings on plaintiff's breach of contract and breach of implied covenant claims, i.e., that JSA could not establish (1) it would have earned any net profit from any sale lost due to late or defective delivery, or the amount of net profit; (2) any damages arising from defendant's failure to forward timely leads; and (3) it lost a library contract "due to [defendant]."[5] Defendant then concluded, *with no SSUMF reference*: "No new evidence supports these damage claims and summary judgment should be granted for [defendant]."

As to plaintiff's interference claims, defendant's memorandum stated *JSA Depot I* found JSA "could not establish damages" for interference, citing SSUMF No. 73 (referencing page 9 of *JSA Depot I* as well as two pages from the reporter's transcript of

---

[4]   SSUMF Nos. 17 and 38 both state: "JSA cannot establish that any of its customer contracts were canceled due to [defendant's] late delivery of turf or delivery of defective turf." Both SSUMF Nos. 17 and 38 refer to pages 7 and 8 of *JSA Depot I* as their sole supporting evidence. In fact, pages 7 and 8 of *JSA Depot I* do *not* say JSA was incapable of establishing that any customer contracts were canceled due to defendant's late or defective deliveries. Rather, those pages state the evidence presented at the first trial was insufficient to support the jury's award of damages: "First, JSA invokes the $120,000 in contracts that its customers canceled due to Foreverlawn deliveries that were late or defective." "JSA cites no evidence reflecting how much, if any, of the $120,000 in lost FSC sales would have been net profit to JSA. [¶] Second, JSA relies on $67,000 in purchase orders with Foreverlawn. It asserts they 'represented . . . turf that turned out to be defective, short, late, or some combination of each.' But the purchase orders do not say so on their faces, and JSA points to no other evidence to that effect." (*JSA Depot I, supra*, G044164.)

[5]   Defendant's corresponding SSUMF Nos. 18, 19, 20, 39, 40, and 41 all begin with the phrase, "JSA cannot establish . . . . ," variously rely on pages 7 to 9 of *JSA Depot I*, and continue to read too much into that opinion, which never held or stated plaintiffs were *incapable* of proving damages.

6

the first trial containing defendant's testimony it paid JSA commissions for sales made by defendant in JSA's territory) and SSUMF No. 57 (referencing page 9 of *JSA Depot I*). Defendant then concluded, *with no SSUMF reference*: "No new evidence exists to support the claim for damages on either interference claim and summary judgment should be granted for" defendant.[6]

Finally, as to plaintiff's alleged lost future profits, defendant stated plaintiffs could not recover lost future profits on any cause of action because defendant had terminated the contract pursuant to the contractual terms "and there was no finding by the jury that the termination was a breach of contract. [SSUMF Nos. 11, 32]." SSUMF Nos. 11 and 32 state, "At trial, JSA did not assert, and the jury was not instructed, that the July 5, 2007 termination of [the contract] was a breach of contract," and cite as supporting evidence Jury Instruction No. 300.[7] Defendant's memorandum then drew the following legal conclusions: "Because there was no finding by the jury that [defendant's] termination of the [contract] was a breach of contract, all rights and obligations under the [contract] were lawfully terminated in July 2007 . . . . Hence, . . . as a matter of law, [JSA] cannot request or present evidence of alleged lost profits after the termination of the contract." "JSA likewise cannot recover lost future profits for breach of the implied covenant of good faith and fair dealing because, once [defendant] lawfully terminated the [contract] on July 5, 2007, there was no longer an implied covenant . . . in

---

[6]       In fact, page 9 of *JSA Depot I* does *not* say JSA was incapable of establishing damages for interference. Rather, page 9 states plaintiffs presented insufficient evidence of the jury's award of $31,000 damages for JSA's interference claim and $30,000 for FSC's claim. (*JSA Depot I*, *supra*, G044164.)

[7]       Jury Instruction No. 300, titled "Breach of Contract — Introduction," states JSA "claims that [defendant] breached this contract in separate instances as follows:" and then lists eight types of claimed breaches, such as JSA's allegation defendant "failed to timely deliver prepaid orders for turf to JSA . . . ." Defendant's termination of the contract is not listed as a type of claimed breach. The "Jury Instructions" referenced by defendant are the CACI instructions given to the jury in *JSA Depot I*.

the contract. [SSUMF Nos. 29-30]. [¶] The interference claims are no different" since they are predicated on violation of the contract. "[SSUMF Nos. 52, 68]." SSUMF No. 29 states, "JSA did not cure the default and [defendant] terminated the contract on July 5, 2007," citing certain reporter's transcript pages as supporting evidence. SSUMF No. 30 states, "The parties['] rights and obligations under the [contract] terminated upon the July 5, 2007 termination of the [contract]," citing certain reporter's transcript pages as supporting evidence. SSUMF No. 52 states, "At trial, [FSC] claimed that [defendant] negligently interfered with the relationship between [FSC] and JSA that probably would have resulted in an economic benefit to [FSC]," citing Jury Instruction No. 2204 as supporting evidence. SSUMF No. 68 states, "At trial, JSA claimed that [defendant] intentionally interfered with contracts between JSA and JSA's customers and sub dealers," citing Jury Instruction No. 2201 as supporting evidence.

Defendant's memorandum further argued: "In addition, the Court of Appeal[] found that Plaintiffs have no competent evidence of lost future profits, finding the claim 'speculative,' 'contingent,' and 'merely possible.' [SSMUF Nos. 21, 42, 59, 74]." Defendant cited, as supporting evidence for SSMUF Nos. 21, 42, 59, and 74, *JSA Depot I* and some pages from the reporter's transcript of the first trial. Defendant concluded: "No new competent evidence exists to support Plaintiffs' claim for lost future profits. Accordingly, summary judgment should be granted for" defendant. Defendant provided no SSUMF reference to support this conclusion.

### 2. Plaintiffs' Expert

In April 2014, defendant moved ex parte for an order compelling the deposition of plaintiffs' expert witness, Tony Yip, a certified public accountant. Defendant's counsel declared that during Yip's July 31, 2012 deposition, Yip offered opinions on plaintiffs' lost profits claim, but also warned that his opinions might change if he were provided records of sales of defendant's Northern California and Phoenix

8

dealers.  Defendant's counsel therefore had not closed Yip's deposition and had made "extensive efforts to try to complete [Yip's] deposition to obtain his final, complete opinions that he intends to offer at trial."

> 3.  Plaintiffs' Opposition to Defendant's Summary Judgment Motion

Plaintiffs filed a memorandum of points and authorities opposing defendant's summary judgment motion.  Plaintiffs argued:  "According to the defendant's moving papers, it is entitled to summary judgment for two reasons:  (1) Plaintiffs are not entitled to lost future profits as a matter of law, and (2) Plaintiffs cannot provide any evidence of damages. . . .  [T]hese arguments are premised upon material omissions that the defendant has chosen to omit from its moving papers.  First, the defendant has previously brought a motion to exclude evidence of lost future profits, a motion the Court denied.  Second, the moving papers bear no mention of the fact that the defendant has already taken the deposition of Plaintiffs' lost profits expert."

Plaintiffs attached as an exhibit the court's April 11, 2012 minute order which denied defendant's motion to exclude evidence of alleged lost future profits.  The court's order stated that the jury in the first trial found plaintiff performed or substantially performed under the contract and thus defendant's termination of the contract constituted a breach.

Plaintiffs further argued that a triable issue of fact existed on the issue of damages because plaintiffs intended to proffer testimony from their expert witness Yip at trial, and "defendant knows this because the defendant has taken Mr. Yip's deposition and is aware that Mr. Yip intends to testify that Plaintiffs lost $1,224,741 in future profits as a result of defendant's bad acts.  (Ex. D., Yip Depo.; Ex. E, Yip Report.)  Indeed, defendant[] hired [its] own expert to testify that Mr. Yip's opinion is overstated."  Plaintiffs' exhibit D consisted of a single page from Yip's deposition, showing that defendant's counsel had marked and authenticated as exhibit 1 Yip's report of "10 pages,

9

consisting of [his] various calculations regarding the lost profit of both JSA and" FSC. Exhibit E consisted of two pages of dollar amounts and percentages apparently calculating lost profits for 2007-2011, of which the first page was stamped as page 1 of 10 of defendant's exhibit 1 for witness Yip dated July 31, 2012. Plaintiffs asked the court to take judicial notice of exhibits G through Q. Exhibit Q was *JSA Depot II*.

As to SSUMF Nos. 17, 18, 19, 38, 39, 40, 57, and 73 — on which defendant relied for its assertion plaintiffs were incapable of establishing damages for breach of contract, breach of the implied covenant, and interference — plaintiffs disputed each of these identically as follows: "When defendant deposed Plaintiffs' expert witness, Tony Yip, they learned . . . that the Plaintiffs are seeking lost profits in the amount of approximately $1.2 million."

As to SSUMF Nos. 11, 29, 30, 32, 52, and 68 — on which defendant relied for its assertion plaintiffs were incapable of establishing lost future profits damages because defendant purportedly legally terminated the contract — plaintiffs disputed SSUMF Nos. 11 and 32, stating: "The jury instruction does not list the termination of the [contract] as a breach, but Plaintiffs sought — and were awarded — lost future profits as a result of defendant's bad acts. Defendant has already been ruled to be liable to Plaintiffs for future lost profits. Defendant is simply trying to relitigate issues it has already lost." Plaintiffs disputed SSUMF No. 29, stating: "The verdict from the original trial already found that JSA had complied with, or substantially complied with all of its obligations under the [contract]. Defendant is simply trying to relitigate issues it has already lost." Plaintiffs disputed SSUMF No. 30, stating: "Defendant has already been ruled to be liable to Plaintiffs for lost future profits. Defendant is simply trying to relitigate issues it has already lost." Plaintiffs disputed SSUMF No. 39 with the same explanation quoted in the preceding paragraph of this opinion. Plaintiffs did not dispute SSUMF Nos. 52 (asserting FSC claimed at trial that defendant negligently interfered with its relationship with JSA that would have probably been economically beneficial to FSC)

10

and 68 (asserting JSA claimed defendant intentionally interfered with contracts between JSA and its customers and sub dealers).

### 4. Defendant's Reply

In defendant's reply, it argued "the one page excerpt of deposition testimony and two page exhibit from Tony Yip's deposition transcript fall far short of meeting the standard for expert declarations and are insufficient to avoid summary judgment." "Futhermore, Yip cannot — and does not — provide an expert opinion on causation and Plaintiffs do not offer a single declaration or other admissible fact to show causation or harm."

### 5. Plaintiffs' Submission of Yip's Deposition

Following defendant's reply, plaintiffs submitted Yip's entire 246-page July 31, 2012 deposition as supplemental evidence in support of their opposition to defendant's summary judgment motion.

### 6. The Court Hearing

At the hearing on defendant's summary judgment motion, the court stated its tentative decision was that defendant had failed to meet its "initial burden of proof that would even require the plaintiff to address the issues . . . ."

Defendant's counsel argued defendant had met its burden. She argued defendant had set forth material undisputed facts to show there was no causation and no damage or harm. She asserted defendant had supported those facts with trial testimony, plaintiffs' deposition testimony, "the law of the case" from the Court of Appeal, citations to the law and to the case from the Court of Appeal, plaintiffs' complaint, and reporter's transcripts, all as reflected in defendant's SSUMF. She concluded the burden should shift to plaintiffs "to submit some kind of evidence including admissible expert

11

testimony." She observed that plaintiffs had had two years to try to marshal "causation and damages evidence with an expert with their clients' declarations." She pointed out the court had now sustained defendant's objection to plaintiffs' "one and only expert report" so it was unclear how plaintiff could "go forward from this point."

The court noted *JSA Depot I* did not "foreclose [plaintiffs from presenting] additional evidence." Defendant's counsel asserted plaintiffs had no additional evidence. Plaintiffs' counsel said to her, "You have taken expert depos." Defendant's counsel replied she had taken an expert deposition but the expert had not committed to an opinion. Instead, the expert had said his opinion might change and that he needed new documents. Defendant's counsel asserted that defendant had tried several times "to conclude that deposition," but plaintiffs had refused to produce the expert.

The court stated, "It . . . sounds like it all hangs on Mr. Yip's testimony." Plaintiffs' counsel agreed, and stated defendant's summary judgment motion involved issues on which both sides knew there was competent evidence on disputed facts. Plaintiffs' counsel argued Yip had testified at his deposition to damages of $1.2 million and that plaintiffs had "been trying to subpoena some records" and plaintiffs' counsel was "not sure if that's going to change Mr. Yip's opinion." In response to the court's inquiry, plaintiffs' counsel clarified that Yip had *not* testified at the first trial; in other words, that Yip was a new witness. Plaintiffs' counsel argued that both sides had expert witnesses.

Defendant's counsel argued defendant had no burden to "somehow present Yip's testimony," Yip was plaintiff's expert, Yip's testimony was inadmissible for many reasons, and plaintiffs' submission of "one page of deposition testimony and an expert report with no explanation" had been properly stricken by the court.

12

7.  The Court's Ruling

The court granted defendant's summary judgment motion for the following expressed reasons.  The court sustained defendant's objections to plaintiffs' exhibits B, C, D, E, and F.  The court granted plaintiffs' request for judicial notice of exhibits G through Q, and defendant's request for judicial notice Nos. 1 through 3.  Plaintiff did not dispute facts 1-5, 10, 12, 14-16, 22-26, 31, 33, 35-37, 43-47, 52-56, 60-63, and 68-72.  Facts 6-9, 11, 27-30, 32, 48-51, 64-67 were irrelevant to defendant's summary judgment motion, as they were relevant only to the issue of liability, *not* "to the issue of damages, which was the only issue remanded for trial."  Three years had passed since the issuance of *JSA Depot I*, which held no substantial evidence produced at trial had supported the award of damages.  Now, one month before the scheduled damages retrial, "the only evidence of damages that the plaintiffs . . . offer is the Yip report, and snippets of deposition testimony, some of it from an Ohio proceeding (Exhibits B-F to the Declaration of Matthew J. Faust).  [Citation.]  The Court has sustained the objections to this evidence.  The deposition of Mr. Yip, lodged on the eve of the hearing, is not considered by the Court, as it was not properly offered in the opposing papers.  [¶] Defendants carried their [*sic*] burden of demonstrating entitlement to summary judgment and the plaintiffs did not proffer any admissible evidence in opposition to the motion so as to create a triable issue of fact."

The court entered judgment in defendant's favor.


DISCUSSION


Plaintiffs contend the court's grant of defendant's summary judgment motion was erroneous for two independent reasons.  First, they contend defendant failed to meet its burden of production to make a prima facie showing plaintiffs could not establish an element of their cause of action.  Second, and alternatively, plaintiffs contend

13

the court's order failed to specifically refer to the evidence proffered by defendant in support of its summary judgment motion as required by Code of Civil Procedure section 437c, subdivision (g).[8]

Defendant contends it carried its initial burden of production by relying on *JSA Depot I* and *JSA Depot II* under the doctrine of law of the case. It argues its citations to these prior opinions and the reporter's transcript from the first trial "'conclusively negated' plaintiffs' claim for future lost profits." It argues that if "there is no new evidence at the time a summary judgment motion is filed, such a motion is proper because [the] law of the case satisfies the initial burden on summary judgment. [Citation.] [Defendant] therefore met its initial burden because the onus was on plaintiffs to establish changed circumstances, and they failed to do so."

A defendant moving for summary judgment "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 (*Aguilar*).) "A burden of production entails only the presentation of 'evidence.'" (*Id.* at p. 850.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id.* at p. 851.) If the defendant "carries his burden of production, he causes a shift, and the [plaintiff] is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Id.* at p. 850.) "The pleadings serve as the 'outer measure of materiality' . . . ." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) [¶] 10:51.1, p. 10-19.)

A defendant may move for summary judgment by contending the plaintiff's action has no merit. (§ 437c, subd. (a).) A defendant shows that a plaintiff's cause of action has no merit by showing that an element of the cause of action cannot be

---

[8]     All statutory references are to the Code of Civil Procedure.

established, or that there is a complete defense to that cause of action." (§ 437c, subd. (p)(2).)

To show that the plaintiff cannot establish an element of a cause of action, a defendant may "show that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Aguilar*, *supra*, 25 Cal.4th at p. 854.) A defendant must do more, however, than simply allege "that the plaintiff does not possess, and cannot reasonably obtain, needed evidence" (*ibid.*), or simply suggest "the possibility that plaintiff cannot prove its case" (6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 241, p. 687). Rather, in order to shift the burden of production to the plaintiff, "a defendant who cannot negate an element of the plaintiff's case is required to produce direct or circumstantial evidence that the plaintiff not only does not have but cannot reasonably expect to obtain a prima facie case." (*Ibid.*) For example, the defendant may present evidence of admissions made "by the plaintiff following extensive discovery to the effect that he has discovered nothing" (*Aguilar*, at p. 855), or of the plaintiff's "factually devoid discovery responses" (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 590).

We independently review the court's grant of summary judgment to defendant. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) "In performing our de novo review, we view the evidence in the light most favorable to plaintiffs as the losing parties." (*Ibid.*)

We conclude the court's order granting defendant's summary judgment motion was erroneous for two independent reasons. First, the court's order failed to "specifically refer" to the evidence proffered by defendant to support its motion and which indicated no triable issue exists, as required by section 437c, subdivision (g). The court's written order focused on plaintiffs' showing, with the exception of the following conclusory, nonspecific statement concerning defendant's showing: "Defendants carried their burden of demonstrating entitlement to summary judgment . . . ."

Second, defendant failed to show plaintiffs did not possess, or could not reasonably obtain, evidence sufficient to make a prima facie case they suffered damages caused by defendant's wrongful acts or omissions. Defendant contends its reliance on *JSA Depot I* and *JSA Depot II* was a sufficient showing to meet its initial burden of production based on the doctrine of "law of the case." "'The doctrine of "law of the case" deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.'" (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491.)[9]

Defendant correctly states that the law of the case here includes *JSA I's* holding that insufficient evidence supported the jury's damages award in the first trial. And, defendant logically concludes that plaintiffs, on retrial, "could not rely on the incompetent damages evidence they presented at the first trial." But defendant incorrectly asserts it met its initial burden on summary judgment simply by arguing (with no evidentiary support) that plaintiffs were incapable of producing new evidence on retrial. Instead, defendant needed to produce direct or circumstantial evidence that plaintiff *did not possess and could not reasonably obtain* any competent evidence of

---

[9] Defendant also quotes the following passage from Witkin: "Where the sufficiency of the evidence to sustain the judgment depends on the probative value or effect of the evidence itself (as distinguished from the credibility of witnesses), and there is no substantial difference in the evidence in the retrial, the former decision is law of the case." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 470, p. 528). The balance of Witkin's text goes on to state: "The evidence produced on a retrial is seldom identical to that in the first trial, and the doctrine will be applied notwithstanding insubstantial changes, e.g., where the new evidence is merely cumulative or of such slight probative value as to have no effect on an already existing conflict. (*Ibid*.) "In reaching its conclusion that the evidence is the same, the reviewing court may examine the opinion on the previous appeal, and, if necessary, compare the records of the two trials." (*Id*. at p. 529.)

16

damages. The result of defendant's failure to do so is that the burden of production did *not* shift to plaintiffs. Moreover, defendant's contention plaintiffs "presented the same evidence as that considered in [*JSA Depot I*] because they offered nothing new" is simply false. On retrial, plaintiffs intend to present Yip's expert testimony on the amount of lost future profits damages they allegedly suffered. But again, the burden never shifted to plaintiffs to even require them to show they had new evidence.

The bounds of materiality defined by the operative complaint for purposes of defendant's summary judgment motion on retrial is that plaintiffs sought damages in a sum "according to proof." As to both pre- and post-contract termination damages, defendant cited no direct or circumstantial evidence plaintiffs did not possess and could not reasonably obtain new and competent evidence of damages in some sum to be proved at trial. Accordingly, defendant failed to meet its initial burden of production and the trial court was required to deny defendant's motion for summary judgment.

## DISPOSITION

The judgment is reversed. Plaintiffs shall recover their costs incurred on appeal.

IKOLA, J.

WE CONCUR:

ARONSON, ACTING P. J.

THOMPSON, J.

17